SYLVESTER VIETS, Respondent, *v.* THE UNION NATIONAL BANK OF TROY, Appellant.

Plaintiff, at the request of B., deposited certain moneys belonging to the latter, with defendant; he made the deposit, however, in his own name, to the credit of a deposit account he then had with defendant, and gave to B. two checks for the amount, which the latter, on February 22, 1869, indorsed and delivered to E. as part consideration for her promise to marry him. On the next day, proceedings *de lunatico inquirendo* were instituted against B. and an inquisition therein, held March tenth, adjudged him to be of unsound mind and that he had been, for a period of six months. Pending the proceeding, an order was made enjoining the defendant from paying over the moneys to any one. On March thirty-first an order was made confirming the inquisition and directing defendant to pay the said moneys to the committee thereby appointed, and on April fifteenth defendant complied with the order. On March sixth, one of the checks was presented to defendant for payment and refused. On March eighth B. was married to E. The other check was presented and payment refused August 28, 1871. In an action to recover the amount so deposited, *held*, that as the money belonged to B. when deposited, although the deposit was in plaintiff's name, it still remained the property of B. and the payment to the committee was a legal payment which

discharged defendant; that, assuming there was an equitable right in E. to the money arising out of the ante-nuptial contract, such equity could not be invoked against the bank, it having no notice of the same when it made payment.

*It seems* that if any such equitable claim existed it could only be enforced in an action against the committee.

The committee so appointed brought an action against E. to set aside the marriage on the ground of the alleged lunacy of B. The trial resulted in a finding that, at the time of the marriage, B. was of sound mind and capable of entering into a marriage contract, and judgment was entered in favor of E. *Held*, that this did not affect the validity of the appointment of the committee or of the payment by defendant.

This action was brought in 1878. *Held*, that the right of action, if any existed, was barred by the statute of limitations; and this, although defendant had, within six years, paid checks drawn by plaintiff for the balance due him for moneys deposited on his own account, aside from the moneys in question.

While a check drawn by a depositor against a general bank account does not operate as an assignment of so much of the account, it authorizes the payee, or one to whom he has indorsed and delivered it, to make a demand, and a refusal of the bank to pay on presentation gives the drawer a right of action, in case he has funds in bank to meet the check and the refusal was without his authority.

The presumption is that a third person presenting a check payable to the order of and indorsed by the payee has authority to present it, at least so far as the drawer is concerned.

The implied contract between a bank and its depositors is that it will pay the deposits when and in such sums as are demanded, the depositor having the election to make the whole payable at one time by demanding the whole, or in installments by demanding portions ; and whenever a demand is made by presentation of a genuine check in the hands of a person entitled to receive the amount thereof, for a portion of the amount on deposit, and payment is refused, a cause of action immediately arises, and the statute of limitations begins to run as against the installment so made due and payable.

The provision of the Code of Civil Procedure (Subd. 3, § 414) excepting from the limitations contained therein a case where a person who, at the time said Code took effect, was entitled to commence an action or proceeding, and who commenced the same within two years thereafter, and making the provision of law previously in force, although then repealed, still applicable thereto, did not operate to extend the time for the bar of the statute of limitations to take effect ; it merely left actions or proceedings brought within two years to be governed by the law in force when the Code went into effect.

*Viets* v. *Union Nat. Bank* (31 Hun, 484), reversed.

(Argued January 29, 1886 ; decided March 2, 1886.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made February 4, 1884, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial without a jury.    (Reported below, 31 Hun, 484.)

This action was brought to recover a balance alleged to be due plaintiff on his deposit account with the defendant.

The material facts are stated in the opinion.

*James Lansing* for appellant.    The bank, upon receiving the deposit, became debtor ostensibly to the depositor, but equitably to the real owner, and upon proper demand was liable to him.    (*Van Allen* v. *Am. Nat. Bk.*, 52 N. Y. 1; *Stephens* v. *Bd. of Education*, 79 id. 183.)    When it received notice that the fund in question was the property of Banker, it was its duty to hold it for his benefit.    And it would have subsequently paid it to Viets at its peril.    (52 N. Y. 1.)    The plaintiff, having deposited the fund in accordance with the direction of the owner, was relieved from all liability for loss happening without his fault.    (52 N. Y. 1; *Pennell* v. *Deffell*, 4 De Gex, M. & G. 372.)    If a delivery of the checks did amount to an equitable assignment of the fund, then, according to the facts disclosed, Mrs. Banker became, on the 22d of March, 1869, the owner of the fund, and she alone could maintain the action.    (*Risely* v. *Phœnix Bk. of N. Y.*, 83 N. Y. 318; *Coats* v. *First Nat. Bk. of Emporia*, 91 id. 20.)    The inquisition found and the order made by the court thereon, directing the defendant to pay over the money in question to David A. Banker, committee, having been made by a tribunal that had jurisdiction of the person and property of the said John Banker, is binding upon him and his privies, and was sufficient to pass the title to his committee.    (*Smith* v. *Smith*, 79 N. Y. 634; *Dezell* v. *Odell*, 3 Hill, 215; *Corkill* v. *Launder*, 44 Barb. 218; Herman's Law of Estop., § 409; Whart. on Ev., §§ 1087, 1151.)    Assuming that plaintiff, in making the deposit, became and thereafter remained a creditor of the defendant, then we submit that this action is barred by the

statute of limitation. (*Payne* v. *Gardner*, 29 N. Y. 146; *Powell* v. *Adams*, 68 id. 314; *Downs* v. *Phœnix Bk.*, 6 Hill, 297; *Oddie* v. *Nat. City Bk. of N. Y.*, 45 N. Y. 735, 743; *Carroll* v. *Cone*, 40 Barb. 220; *Farmers & Mech. Bk.* v. *Planters' Bk.*, 10 Gill. & J. 449; Wood on Lim. of Act. 40, 540; *Bk. of Mo.* v. *Benoist*, 10 Mo. 519; Angell on Lim. of Act., § 42; *Battley* v. *Falkner*, 5 E. C. L. 172; *Arnott* v. *Holden*, 22 L. J. Q. B. 19; *Whitehead* v. *Lord*, 21 L. J. Exch. 239; *McDonald* v. *Stohey*, 1 Mon. 338; Byles on Bills, 14, 21; 2 Daniel on Neg. Instr. 302, 310; Morse on Bk. and Bkg. 36, 529; *Mandeville* v. *Welch*, 5 Wheat. 356; *Marzetti* v. *Williams*, 1 B. & A. 414; *Rollins* v. *Stewart*, 78 E. C. L. 594; *Watts* v. *Christie*, 11 Beav. 546; *Bk. of Brit. No. Am.* v. *Mer. Nat. Bk. of N. Y.*, 91 N. Y. 106; *Murray* v. *Coster*, 20 Johns. 576, 586; *Rundele* v. *Allison*, 34 N. Y. 180; *Kelsey* v. *Griswal*, 6 Barb. 436; *Bruce* v. *Tillson*, 25 N. Y. 196.) An account stated can only be opened when the party objecting shows clearly that he has been misled by fraud, mistake or manifest error. (*Harley* v. *Eleventh Ward Bk.*, 76 N. Y. 618; *Thompson* v. *Bk. Brit. No. Am.*, 82 id. 7; *Lockwood* v. *Thorne*, 11 id. 170; 18 id. 294; Angell on Lim., § 150; *Peck* v. *N. Y. & Liv. U. S. M. S. S. Co.*, 5 Bosw. 236.) To take a case out of the statute, the part payment must be shown to have been a payment in part discharge of the particular debt sued for, and to have been so intended to recognize the debt in question as subsisting. (*Miller* v. *Talcott*, 46 Barb. 172; *Deyo's Ex'rs* v. *Jones' Ex'rs*, 19 Wend. 491.)

*R. A. Parmenter* for respondent. A check drawn upon a general deposit and delivered to a third person does not operate as a transfer or assignment of any part of the general fund, or create a lien at law or in equity upon the deposit. (*Ætna Nat. Bk.* v. *Fourth Nat. Bk.*, 46 N. Y. 82, 87; *Dykers* v. *Leather Mfg. Bk.*, 11 Paige, 612; *Cowperthwaite* v. *Sheffield*, 3 N. Y. 251; *Chapman* v. *White*, 6 id. 412; *Tyler* v. *Gould*, 48 id. 682; *Atty.-Genl.* v. *Contl. L. Ins. Co.*, 71 id. 325; *Bk.*

*of Brit. No. Am.* v. *Merch. Nat. Bk. of N. Y.*, 91 id. 106.) The defense of the statute of limitation is not available to the defendant on this appeal under the proofs and the exceptions. (*Goillotel* v. *Mayor, etc.*, 87 N. Y. 441; *Downs* v. *Phœnix Bk.*, 6 Hill, 297, 299; *Payne* v. *Gardner*, 29 N. Y. 146, 171–172; *Rogers* v. *Weir*, 34 id. 463, 471; Story on Bailm. 66, § 88; *Risley* v. *Phœnix Bk.*, 83 N. Y. 318.)

MILLER, J.   The controversy in this action arises in reference to certain moneys belonging to one John Banker, deceased, which were deposited with the defendant to the credit of the plaintiff.   Previous to this time Banker was the owner of a bond and mortgage of about $6,000, on a farm formerly belonging to him upon the sale of which the mortgage was exe-cuted.   This mortgage he sold and received a check for the amount of the sale.   On the 19th of February 1869, the plaintiff at Banker's request took his check to the bank, and had it cashed and from the proceeds paid an overdue note, upon which Banker was indorser of about $600, gave Banker when he returned about $200, and on the same day deposited the balance, $4,867.83, with defendant in his own name.   He then by direction of Banker, and on the same day, drew two checks payable to Banker, one for $3,500 and the other for $1,367, and delivered them to him.   On the twenty-second of February these two checks were indorsed by Banker and delivered to one Ellen M. Houghtaling as part consideration for her promise of marriage with said Banker.   On the twenty-third of February proceedings were instituted by David A. Banker, son of John Banker, in the nature of a writ *de lunatico inquirendo*, to inquire as to the lunacy of said John Banker, and a commission issued directing an inquisition to be held, and by virtue of said inquisition held March tenth, it was adjudged that Banker was of unsound mind and incapable of governing himself or managing his property and had been in such state of lunacy for a period of six months.   Pending the proceedings an order was made by the court enjoining the bank from paying over to any one the money deposited with it until further order of the court.

On the thirty-first of March, an order was made confirming the inquisition, and directing the bank to pay over the money deposited to David A. Banker as committee of John Banker, and on the fourteenth of April the defendant, on receiving an indemity bond, paid over to the committee accordingly. On the 6th of March, 1869, the check for $3,500 was presented to the bank for payment and payment refused, and on the 28th of August, 1871, the check for $1,367 was likewise presented for payment, and payment refused. On the 8th of March, 1869, John Banker was married to Ellen M. Houghtaling. After the above-named two checks were presented to the bank for payment, and payment refused, Mrs. Banker recovered a judgment against the plaintiff for the amount of the same. Banker died on the 14th of September, 1869, and after his decease an action was brought in the Supreme Court by his committee to set aside his marriage on the ground of his alleged lunacy. On the trial of the action, February 24, 1870, it was found that at the time of his marriage, March 8, 1869, Banker was not of unsound mind ; that after his marriage he had lucid intervals, and in such lucid intervals recognized such marriage by cohabitation and otherwise, and that at the time of his death he was not of sound mind, and judgment was entered in accordance with these findings.

The plaintiff's right to recover in this action does not rest upon the ground that he was the owner of the money deposited in the bank or had any absolute title to the same. It clearly did not belong to him, and if this action can be maintained, it must be for the reason that the deposit in his name with the consent of Banker and the making and delivery of the checks under the circumstances stated, conferred upon him the right to enforce payment thereof against the bank.

As the money in the bank belonged to John Banker and the deposit was made by his direction, it mattered not that the deposit was made to the plaintiff's individual account, and in an action brought by the principal the bank could not set up a want of privity. (*Van Alen* v. *Am. Nat. Bk.*, 52 N. Y. 1.) We must, therefore, assume that the money deposited by the

plaintiff was the property of John Banker while it remained in the possession of the defendant.

Such being the case the question arises whether the payment which was made by the bank to the committee, who had been appointed by the Supreme Court in the proceedings against Banker as a lunatic, was a legal payment which discharged the bank from liability and bars the plaintiff's right to maintain any action for the same.

The law makes provision for the appointment of a committee of the personal estate of a lunatic and vests in such committee the right to possession of the estate, and after an adjudication of lunacy has been made and confirmed by the court, and a committee of his estate duly appointed and qualified, such committee occupies the same position and fills the same place as the lunatic in regard to his personal estate and property. He has the same control and possession thereof, and in all ordinary matters the right to deal therewith, as the lunatic enjoyed before he was found to be of unsound mind. The committee is the representative of the lunatic in respect to all matters connected with his estate.

When, therefore, on the 10th of March, 1869, in proceedings had against John Banker, the regularity of which is not disputed, a judgment of lunacy was obtained against him, and thereupon subsequently a committee appointed to take charge of his estate, he, Banker, became divested of all right to control his property in accordance with the findings under the inquisition had. That inquisition determined not only that he was a lunatic on said tenth day of March, but that he had been such for a space of six months previous. A short time after that, the committee, who had been duly appointed and qualified, applied to the defendant as the representative of Banker, to whom alone the money deposited by the plaintiff belonged, and, exhibiting his authority, demanded payment of the money and it was paid to him. Banker, who was the owner of the money, had no right to receive it, because he had been declared a lunatic and the committee was the only person whom the law recognized as having authority for such a purpose.

Even if it be assumed that there was an equitable right in Mrs. Banker to the money arising out of the ante-nuptial contract with her husband, such equity cannot be invoked as against the bank that had no notice of the same, and in good faith paid the money to the legal representative of the owner thereof. The bank is entitled to protection for the reason that it paid the money to one who apparently had the right to receive it. If any equitable claim existed in favor of any third party, it could only be prosecuted and enforced in an action against the committee who had received the money and not against the bank in contravention and repudiation of its right to pay which it had exercised in good faith to one ostensibly vested with lawful authority to receive the same. With this apparent lawful authority presented by the committee to the bank, it was not required to examine and determine the equities of other parties, of which it had no knowledge, to the fund, and it had a right to assume that the committee appointed by the court had full power to act. It must be conceded that if the adjudication of lunacy was in force at the time the payment was made, it was a valid and legal payment and an effectual bar to any claim by the plaintiff or any other person to recover the money of the defendant. Such adjudication, however, is assailed by the respondent's counsel, and it is insisted that the question of lunacy is out of the case because it was shown that the presumption of lunacy arising from the inquisition in the lunacy proceedings against John Banker, had been overcome and wiped out by the subsequent judgment in the equity suit brought by David A. Banker, the committee, against Ellen M. Banker, to declare the marriage contract null and void, whereby it was adjudged that at the time of his marriage on the 8th of March, 1869, John Banker was not a person of unsound mind, and therefore he must be regarded, for the purposes of this appeal, as a person of sound mind fully capable of managing his affairs and disposing of his property at the various times during which the transactions, out of which this controversy arose, transpired. We do not think that such was the effect of the judgment in the action referred to, and all that was established

thereby was the sanity and ability of Banker to enter into the marriage contract on the eighth of March, two days before the inquisition was held adjudging him a lunatic.

The other findings in the case, as we have seen, evince that Banker was of unsound mind after the eighth of March and at the time of his death. None of them are in conflict with the general finding of the inquisition that he was of unsound mind for six months prior to the time it was held. The only fact that was established by the verdict and judgment in the action to set aside his marriage was the sanity of Banker at the time he entered into the marriage contract, and this is entirely consistent with the finding of the inquisition that he was a lunatic two days afterward, and with the fact that he was such on the twenty-second of February, when the alleged transfer of the checks was made to Mrs. Banker.

It cannot, we think, be denied, in view of all the circumstances, that the judgment in the action referred to only covered the day of Banker's marriage, to which alone it had reference. This is entirely apparent from the previous inquisition, which had adjudged that he was a person of unsound mind and a lunatic long prior to his marriage. He was found to have been a lunatic for several months prior to that time by the first adjudication, and by the second that he was sane at the time of his marriage and had lucid intervals, but was of unsound mind at the time of his death. Taking all these facts in connection, there is no ground for claiming that Banker was not of unsound mind for a long period anterior to his marriage and after the same, with lucid intervals to the day of his death. Such being the case, the last adjudication could not affect the conclusion arrived at upon the inquisition and the appointment of the committee by reason thereof. To all intents and purposes during these transactions, with the single exception of the day of his marriage, Banker was a person of unsound mind, incapable of managing his affairs, and his acts during the transactions referred to were invalid and liable to be set aside on account of his lunacy. Whatever rights, therefore, existed in favor of Mrs. Banker or of the plaintiff could only be vindi-

cated by an action to obtain the money from the committee to whom it had been lawfully paid. Neither of these parties could ignore the effect of the findings, upon the inquisition, against Banker by an action against the defendant. Their remedy, if any existed, lay in a different direction, as we have seen, and it cannot be obtained in this present action.

It follows that the order appointing the committee, upon the findings of the inquisition, having been made by a tribunal that had jurisdiction of the person and property of the said John Banker, was binding upon Banker and his privies and sufficient to authorize the payment by the bank to the committee, and · that the court erred in holding the defendant liable to the plaintiff for the amount of the two checks deposited with it by the plaintiff.

We are also of the opinion that the plaintiff's right to recover in this action, which was brought in 1878, was barred by the statute of limitations.

While it is true that a check drawn against a general bank account does not operate as an assignment, and that, as a general rule, the holder cannot maintain an action against the drawee because of want of privity, it is equally true that the giving of a check authorizes the payee, or some person taking the check, to make demand of payment (*Bk. of British N. Am.* v. *Merchants' National Bk.*, 91 N. Y. 106, 111), and the refusal to pay on presentation of the check, which presentation is equivalent to a demand of payment, gives to the drawer a right of action, in case he has funds in the bank to meet the check, and the refusal to pay was without his authority.

It appeared indisputably, and is substantially found by the trial court, that the two checks given by plaintiff to Banker and by him indorsed to Ellen M. Houghtaling, were presented to the bank, defendant, for payment, and payment refused, the one in March, 1869, the other in August, 1871. At the time of such refusal there was written upon one of the checks " Payment refused " and upon the other "no funds." It is to be presumed, at least so far as plaintiff is concerned, that the per-

son presenting the checks had the right so to do, and nothing is shown to the contrary; such being the case, the bank became liable when presentation was made for the amount of each check, and payment of the same was refused.

We think that a demand for the whole balance on deposit is not requisite in order to enable the depositor to maintain suit against the bank. The implied contract between a bank and its depositor is that it will pay the deposits when and in such sums as are demanded. Whenever a demand is made by presentation of a genuine check in the hands of a person entitled to receive its amount, for a portion of the amount on deposit, and payment is refused, a cause of action immediately arises. For the balance no suit can be brought until demand is made. In other words, the depositor has the election to make the whole claim payable at one time by demanding the whole, or in installments by demanding portions thereof, and it would be a novel doctrine that when the claim has thus been made payable in installments, no action could be brought for an installment which has become due and payable, because there is a residue of the claim not due.

But again, the general rule above stated, *i. e.* that the holder of a check cannot maintain an action against the drawee, is not applicable to this case. The money deposited by plaintiff belonged to Banker, and the deposit in the bank was made by his direction. It matters not that the deposit was made to his, plaintiff's, individual account, and in an action brought by the principal against the bank, upon refusal to pay his agent's check, the bank cannot set up a want of privity. (*Van Alen* v. *Am. Nat. Bk.*, 52 N. Y. 1.)

Banker, to whom the money belonged, or any person to whom he had transferred his claim against the bank, could have maintained an action on presentation and refusal to pay the checks, and upon demand and refusal the statute began to run.

The claim made by the respondent's counsel, that if the action had been barred by the statute of limitations it was revived by the payment by the bank of the two checks of the plaintiff, one on December 2, 1872, of $18.82, and the other

on March 27, 1873, of $4.33, and that the defendant was thereby estopped from interposing the defense of the statute of limitations until six years after that, is not well founded. The amount of these two checks constituted the balance which was due to the plaintiff from the defendant for moneys deposited on his own account separate from the moneys belonging to Banker for which the checks in question in this action were drawn. As the depositor has a right to draw his check for separate portions of the money belonging to him on deposit and a cause of action arises upon presentation and refusal to pay such check, the payment of the checks drawn after those which are the subject of controversy in this action, could not affect the cause of action which arose upon their presentation to the bank and its refusal to pay. The payment of the two checks referred to did not authorize the conclusion that the defendant intended to recognize the fact that the other checks were still a subsisting indebtedness against which the statute had not commenced to run, but such payments were entirely separate and independent transactions, having no reference whatever to the checks in suit. Under the facts there is no ground for claiming that the payment of the checks of December 2, 1872, and March 27, 1873, was a recognition of any indebtedness beyond them, and operated as a revival of the debt and prevented the statute from running.

The respondent's counsel also claims that under subdivision 3, section 414, of the Code of Civil Procedure, a person entitled to commence an action when the Code took effect might commence such action before the expiration of two years after the Code should go into effect, and that as the Code went into effect May 1, 1877, he had until May 1, 1879, to bring his action before it would be barred by the statute of limitations. We do not understand such to be the rule under the provision cited, which declares that a person entitled under said section to bring an action when the Code took effect where he commences the same before the expiration of two years after the Code took effect his action is governed by the same law applicable thereto immediately before the Code went into effect. This provision of the Code only left actions brought within two years to be

governed by the law applicable to the case at the time the Code went into effect, and in no way operated to extend the time for the application of the statute of limitations. It remains in force the same as before the enactment of the Code.

There are other questions in the case, but in view of the conclusions already arrived at, their examination is not necessary.

The judgment should be reversed and a new trial granted, with costs to abide the event.

All concur.

EARL, DANFORTH and FINCH, JJ., on both grounds discussed in the opinion; ANDREWS, J., on first ground; RUGER, Ch. J., on second ground. RAPALLO, J., absent.

Judgment reversed.