Charles E. O'Connor, as Receiver, etc., Respondent and Appellant, *v.* The Mechanics' Bank, Appellant and Repondent.

An ordinary uncertified check upon a general bank account is neither a legal nor an equitable assignment of any part of the sum standing to the credit of the depositor, and confers no right upon the payee which he can enforce against the bank.

Such a check is simply an order which may be countermanded and payment forbidden by the drawer at any time before it is actually cashed.

The rule that when deposits are received by a bank, unless they are special deposits, they belong to it as a part of its general funds, and the relation of debtor and creditor arises between it and the depositor, applies where the deposit is of trust money, unless the act of depositing it is a misappropriation of the fund.

One B. died leaving a will, by which he gave his residuary estate to his executors in trust, for the benefit of his four children, with power to sell all or any part thereof, and directed that the same be distributed " in such manner and form and at such time or times as shall in their judgment be for the best interests of my said children." The executors sold a portion of the personal property and deposited a portion of the proceeds in the defendant's bank to the credit of the estate of B. Said executors made an apportionment among all the legatees, and drew a check on defendant to the order of F., one of the legatees, for a balance

due him and mailed it to him. F. indorsed the check in blank, and, after passing through several hands, it was paid by defendant March 10, 1888, in the usual course of business. It was not certified and had not been presented before. Prior to such payment a judgment had been recovered against F., and a third-party order in supplementary proceedings based thereon granted and served upon defendant's cashier; this order contained the usual injunction clause. Plaintiff was appointed receiver; after he had qualified, he demanded of defendant the amount on deposit in the account of the estate of B. belonging to F., "or due him from it;" this demand was refused. F. had no notice of the proceedings in which plaintiff was appointed receiver. In an action to recover the portion of the deposit alleged to belong to F., *held*, that in order to recover plaintiff was bound to show that when the order was served on defendant, it had in its possession or under its control certain personal property then belonging to F., or that it then owed him a debt; that the relation between B.'s executors and defendant was that of creditor and debtor only, and in a legal sense they had no money in the bank, but simply a debt against it to the amount of the deposit; that the apportionment and distribution being simply an agreement by the executors among themselves, and so, subject to revocation, and being unaccompanied by any assignment, oral or written, although followed by the giving of a check by them, did not effect a change of title to said debt or any part thereof, or operate as a transfer to the payee of any right as against the bank; and so, that plaintiff failed to establish a cause of action.

*Risley* v. *Phenix Bank* (83 N. Y. 318); *Van Alen* v. *Am. Nat. Bank* (52 id. 1); *Baker* v. *N. Y. Nat. Ex. Bank* (100 id. 31); *Viets* v. *Un. Nat. Bank* (101 id. 563), distinguished.

*O'Connor* v. *Mechanics' Bank* (54 Hun, 272), reversed.

(Argued January 30, 1891; decided February 24, 1891.)

Cross-appeals from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made November 7, 1889, which modified and affirmed as modified a judgment in favor of plaintiff entered upon a decision at Circuit upon a trial without a jury.

This was an action at law by a receiver, appointed in proceedings supplementary to execution, to recover a sum of money deposited by a third party with the defendant, and alleged to belong to the judgment debtor.

The judgment, upon which plaintiff's appointment as receiver is based, was recovered April 2, 1886, against Herbert F.

Beecher. On the 8th of March, 1887, Henry Ward Beecher, father of the judgment debtor, died, leaving a will, that was duly proved in April following, by which he gave his residuary estate to his executors in trust for the benefit of his children, four in number, with power to sell all or any part thereof, and directed that the same should be distributed " in such manner and form and at such time or times as shall in their judgment be for the best interests of my said children." The estate consisted of both real and personal property of considerable value, and the executors, Henry B. and William C. Beecher and Samuel Scoville, having sold a part of the personalty, deposited the proceeds in different banks, one of which was the defendant, the account being entitled : " Estate of Henry Ward Beecher." Checks were drawn upon this account in the due administration of the estate, each being signed either by Henry B. or William C. Beecher, as " Executor." The trial court found, in addition to the foregoing facts, " that in the first part of January, 1888, said executors made a distribution among all the legatees under the said will of said fund so deposited by them and apportioned about $5,000 thereof as the share of the said judgment debtor." It does not appear how such apportionment and distribution was made, except that Henry B. Beecher, on January 30, 1888, drew a check on said account to the order of the judgment debtor for $2,286.92, being the balance due him after paying certain debts pursuant to his instructions, and mailed it to him at Port Townsend, Washington Territory, where he resided. He indorsed it in blank, and, after passing through several hands, it was paid by the defendant March 10, 1888, in the usual course of business. It was never certified and had not been presented before. January 27, 1888, a third-party order, based upon said judgment, was obtained for the examination of William C. Beecher, and the next day was served upon him, and on February first he appeared and was examined. A like order for the examination of defendant's cashier was granted and served on the day last named, and the next day an examination was had thereunder and further proceedings were adjourned until March 21,

1888.   Each  order  contained  the  usual  injunction  clause.
From December 19, 1887, to February 2, 1888, said account
in the defendant bank was not less than $4,644.71, and thence-
forward to February eleventh, it stood at $1,038.49, and after
that date until March tenth, at $2,428.54.

February 3, 1888, the plaintiff was appointed receiver under
the first of said orders and next day the receivership was
extended to the proceedings under the second order.   On the
ninth of February, and after the plaintiff had qualified, he
demanded from the defendant that it should pay him " the
sum of $2,286.92, amount on deposit in said bank in the said
account of the estate of Henry Ward Beecher," and deliver
all money or property in its custody or control belonging to
the judgment debtor, " or due him from it," but the demand
was refused, and February 27, 1888, this action was commenced.
Herbert F. Beecher had no notice of the proceedings which
resulted in the appointment of the plaintiff as receiver.

As conclusions of law, the court found that all funds depos-
ited by the executors were trust funds and that the bank had
notice of the fact; that upon the apportionment and distribu-
tion by the executors, the share of the judgment debtor became
vested in him and subsequently passed to the plaintiff as
receiver, in whose favor judgment was ordered for the sum of
$1,300, which was fixed upon as the amount necessary to cover
the judgment for $484 with interest thereon, together with
the costs and receiver's expenses.

Upon appeal by both parties to the General Term, the judg-
ment was modified by reducing the recovery to $692.65, and
as thus modified affirmed.

Both parties now appeal to this court, the plaintiff claiming
the right to recover the entire fund in controversy, while the
defendant claims that there should be no recovery whatever
against it.

*Edwin R. Leavitt* for plaintiff.   The property of the
judgment debtor vested in the plaintiff as soon as the order
appointing him receiver was filed, namely, February 4, 1888.

(Code Civ. Pro. §§ 1819, 2468, 2469; *McCorkle* v. *Herrman*, 117 N. Y. 297; *Loder* v. *Hatfield*, 71 id. 92, 98; *Bushnell* v. *Carpenter*, 92 id. 270; *Goebel* v. *Wolf*, 113 id. 405; *Warner* v. *Durant*, 76 id. 133; *Bartholomew* v. *Adams*, 8 N. Y. Supp. 179; *Delafield* v. *Shipman*, 103 N. Y. 466; *Vincent* v. *Newhouse*, 83 id. 505; *Harris* v. *Fly*, 7 Paige, 471; *Chase* v. *Beecher*, 6 N. Y. Supp. 227; *Manice* v. *Manice*, 43 N. Y. 363; *Viets* v. *U. N. Bank*, 101 id. 568; *Baker* v. *N. Y. N. E. Bank*, 100 id. 35.) A check is not an assignment of, nor a lien upon, the funds against which it is drawn. (*Lowrey* v. *Stewart*, 25 N. Y. 241; Story on Bills of Exchange, § 86; *Atty.-Gen.* v. *C. L. Ins. Co.*, 71 N. Y. 325; *Lnieth* v. *Bank of America*, 49 Barb. 221; *Æ. N. Bank* v. *F. N. Bank*, 46 N. Y. 82; *Duncan* v. *Berlin*, 60 N. Y. 151, 153; Code Civ. Pro. § 1819; *Rundle* v. *Allison*, 34 id. 180–183.) The bank, by the very title of the account, and the fact of checks being signed "Executor," had full notice of the character of the account; for, where deposits are made in a bank by any one as agent, executor, trustee, etc., the use of such terms charges the bank with notice. (Daniels on Neg. Inst. [3d ed.] § 1612; *N. Bank* v. *Ins. Co.*, 104 U. S. 64, 65; Code Civ. Pro. §§ 2468, 2469.) The whole fund of $2,286.92 not only vested in plaintiff, but he was entitled to receive the whole of it. (Code Civ. Pro. §§ 2468, 2469; *Renald* v. *Wyckoff*, 8 J. & S. 529; *Salter* v. *Bowe*, 32 Hun, 237; High on Receivers, §§ 447, 449; *Campbell* v. *Grant*, 2 Hilt. 290, 296; *Browning* v. *Betts*, 8 Paige, 508; *Bostwick* v. *Menck*, 40 N. Y. 383; *Verplanck* v. *Van Buren*, 76 id. 255; *Merrill* v. *Bank of Norfolk*, 18 Pick. 32.) The plaintiff is a proper person to receive the whole. (*Goodhart* v. *Stilton*, 90 N. Y. 206; *Gelston* v. *S. S. Bank*, 29 Hun, 597.) The court had power to modify the judgment by increasing it. (Code Civ. Pro. § 1317; *Canady* v. *Stiger*, 55 N. Y. 456; *Moffat* v. *Sackett*, 18 id. 528; *Richardson* v. *H. Ins. Co.*, 15 J. & S. 138; *Simonson* v. *Brown*, 68 N. Y. 355; *Hannah* v. *Hannah*, Id. 610, 611; *Bennett* v. *Bates*, 94 id. 354.)

*William C. Beecher* for defendant.   A check upon a bank in the usual form, not accepted, or certified by its cashier to be good, does not constitute a transfer of any money to the credit of the holder.   It is simply an order which may be countermanded and payment forbidden by the drawer at any time before it is actually cashed.   It creates no lien on the money which the holder can enforce against the bank. It does not of itself operate as an equitable assignment.   (*F. M. Co.* v. *Brown*, 124 U. S. 385; *Atty.-Gen.* v. *C. Ins. Co.*, 71 N. Y. 325; *Lynch* v. *F. N. Bank*, 107 id. 179; *Vietz* v. *U. Bank*, 101 id. 563; *Æ. Bank* v. *F. N. Bank*, 46 id. 82, 87; *Bank of Republic* v. *Millard*, 10 Wall. 152; *Carr* v. *N. S. Bank*, 107 Mass. 45; *Chapman* v. *White*, 2 Seld. 412; *Craw- ford* v. *W. S. Bank*, 100 N. Y. 50.)   The court below erred in holding that the deposit was a trust fund created for the benefit of the legatees, and such legatees, as soon as their shares were fixed and set aside, would be entitled to them, and could have sued the bank and collected the same from it.   (*Fletcher* v. *Sharpe*, 108 Ind. 276; *McLain* v. *Wallace*, 103 id. 562; *Butler* v. *Sprague*, 66 N. Y. 392, 395.)   The receiver took title only to such property as belonged to the judgment debtor when the proceedings were commenced and the receiver appointed.   (*DuBois* v. *Cassidy*, 75 N. Y. 298; *Thorn* v. *Fellows*, 5 Wkly. Dig. 473.)   The statement of the account with the bank shows very plainly that it was not a fund set apart for the benefit of the legatees, but simply the current account of the estate used in the general transaction of its affairs.   This is a very different thing from a trust fund in which a legatee had any specific interest.   (*N. Bank* v. *Ins. Co.*, 104 U. S. 54, 63.)   The check having been indorsed generally to Laidlaw & Co., and not for collection, became their property, the title passed to them, and was not again subject to the payee's control.   (*M. Bank* v. *Loyd*, 90 N. Y. 530; *Vietz* v. *U. Bank*, 101 id. 563; *Van Allen* v. *A. Bank*, 52 id. 4; Code Civ. Pro. § 2469; *Bank of Republic* v. *Mil- lard*, 10 Wall. 152, 156.)   The judgment debtor was never

served in supplementary proceedings, and no notice was given him as required by law. (Code Civ. Pro. § 2464; *Whitney* v. *Welch*, 2 Abb. [N. C.] 442; *Ashley* v. *Turner*, 22 Hun, 226; *Stokes* v. *Epstein*, 6 Civ. Pro. Rep. 36.) Plaintiff's contention that the judgment should have been for the whole amount of the check is untenable. (*Bostwick* v. *Menek*, 40 N. Y. 383; High on Receivers, §§ 454, 455; Code Civ. Pro. § 3320.)

VANN, J. This is not a creditor's bill to establish a lien, or to remove an obstacle to the collection of a debt, but a strict action at law to recover a definite sum of money from the defendant. It does not involve the right of the plaintiff to proceed against the executors, or to collect the debt that he represents out of any interest which the judgment debtor may have in his father's estate. In order to recover in this action the plaintiff was bound to show that when the third-party order was served upon the defendant, it had in its possession or under its control certain personal property then belonging to the judgment debtor, or that it then owed him a debt exceeding ten dollars in amount. (Code Civ. Pro. §§ 2441, 2468 and 2469; *McCorkle, as Recr.*, v. *Herrman*, 117 N. Y. 297.) The real question, therefore, is whether the bank was owing the judgment debtor anything, or had any of his property in its possession or under its control? The deposit by the executors with the defendant of money received by them from the sale of the personalty, the apportionment thereof among the legatees and the mailing of the check, form the basis upon which the plaintiff rests his claim that the bank either owed a debt to the judgment debtor or was possessed of some property belonging to him. As the legal title to the personal property before it was sold was in the executors, so the legal title to the proceeds of the sale was in them. When they deposited the proceeds in the bank, however, the title to the money passed to the defendant, which impliedly promised to pay the debt thereby created by honoring the checks of the depositor as they were presented. Thenceforward the relation of the bank and the executors was that of debtor and creditor only.

In a legal sense the executors had no money in the bank, but simply a debt against the bank for the amount of the deposit. (*Ætna National Bank* v. *Fourth National Bank*, 46 N. Y. 82, 86; *Viets* v. *Union National Bank*, 101 id. 563, 573; *Lynch* v. *First National Bank*, 107 id. 179, 184.) Therefore, unless this debt, which the executors held against the defendant, was in some way transferred, wholly or in part, to Herbert F. Beecher, there can be no recovery by the plaintiff who has simply the title of the judgment debtor. There was no transfer of the debt unless the apportionment and distribution by the executors and the giving of the check by them effected a change of title thereto. The apportionment and distribution was apparently a mere agreement by the executors among themselves, subject to revocation or change at any time before actual peformance. No assignment was made either in writing or even by oral agreement, as was the fact in the case of *Risley* v. *Phenix Bank* (83 N. Y. 318). The mere determination of the executors to apportion and distribute among the legatees certain funds on hand, accompanied by no act of performance, transferred no title or interest therein to anyone, and had no effect upon the debt against the bank which had no notice that a distribution was intended or that any special fund was set apart for that purpose. No act either of apportionment or of distribution was shown, except the giving of the check, and that did not operate as a transfer to the holder of any right as against the bank. An ordinary, uncertified check upon a general account is neither a legal nor an equitable assignment of any part of the sum standing to the credit of the depositor, and confers no right upon the payee that he can enforce against the bank. (*Attorney-General* v. *Continental Life Ins. Co.*, 71 N. Y. 325; *Duncan* v. *Berlin*, 60 id. 151; *Ætna National Bank* v. *Fourth National Bank*, *supra*; *Chapman* v. *White*, 6 N. Y. 412; *Carr* v. *National Security Bank*, 107 Mass. 45, 48.)

Such a check, as was said by the Supreme Court of the United States in a recent case, " is simply an order which may be countermanded and payment forbidden by the drawer at

any time before it is actually cashed." (*Florence Mining Co.*
v. *Brown*, 124 U. S. 385, 391.)

The rule is otherwise when the check or order is drawn
upon a particular fund which is specified, but that has no
application to this case, because the check in question was in
the ordinary form and was drawn upon no particular or speci-
fied fund. There was no transfer, therefore, by the executors
to the judgment debtor of any part of their claim against the
bank, and the plaintiff had no title upon which to found this
action unless it was derived from some source other than
the executors. Even if the judgment debtor, after the delivery
of the check to him, could have compelled the executors to
pay it, still he could not have compelled the bank to pay it,
because there was no contract between him and the bank, and
no assignment of any interest in the contract between the
executors and the bank. The holder of an ordinary check,
unaccepted and uncertified, cannot compel payment from the
bank upon which it is drawn, even if the account of the drawer
is sufficient to meet it when presented. Under such circum-
stances the right of action belongs to the drawer or creditor of
the bank and not to the holder who is merely a stranger.
(*Viets* v. *Union National Bank*, 101 N. Y. 563, 572; *Ætna
National Bank* v. *Fourth National Bank, supra ; Winter*
v. *Drury*, 5 N. Y. 525.)

The courts below proceeded to judgment upon the theory
that the moneys were deposited by the executors as the prop-
erty of the estate, and upon the apportionment between the
legatees became impressed with a trust in favor of the judg-
ment debtor. In support of this position certain cases were
relied upon which hold that a bank dealing with the agent of
a disclosed principal, who not only owned the moneys deposited,
but held the check of the agent therefor, could not refuse to
pay such check. (*Van Alen* v. *American National Bank*, 52
N. Y. 1 ; *Baker* v. *New York National Exchange Bank*, 100
id. 31 ; *Viets* v. *Union National Bank*, 101 id. 563.) The
principle underlying these authorities, as stated in the case first
cited (p. 4), is " that so long as money or property belonging

to the principal, or the proceeds thereof, may be traced and distinguished in the hands of the agent, or his representatives, or assignees, the principal is entitled to recover it unless it has been transferred for value without notice." In other words, when the debt created by a deposit belongs to the principal, instead of the agent who made it in his own name, the bank, upon notice of the facts, must recognize the actual rather than the nominal depositor. This principle is frequently applied by courts of equity to prevent a misappropriation of trust funds, but it does not apply to the case in hand, because no attempt at misappropriation is claimed, and because this is an action at law where the judgment debtor was not the principal and the executors were not his agents in the sense required to change the relation between the depositor and depositary.

As was said in *Fletcher* v. *Sharpe* (108 Ind. 276), "When deposits are received, unless they are special deposits, they belong to the bank as a part of its general funds, and the relation of debtor and creditor arises between the bank and the depositor. This is equally so whether the deposit is of trust money, or funds which are impressed with no trust, provided the act of depositing is no misappropriation of the fund."

There had been no accounting by the executors when the receiver was appointed, and it was not yet time for them to account, as less than a year had passed since the will was admitted to probate. All the property of the testator, by force of the will, vested in the executors in trust for the benefit of the legatees. While the judgment debtor had a general claim to one-fourth of the net residuary estate, he had no title to any specific part, nor to the proceeds of any specific part, and his claim could not be enforced until after the time for an accounting had arrived. Prior to a judicial determination that all the debts of a testator have been paid, made after proper notice, all payments to legatees are at the peril of the executors, for the assets of an estate are held by them primarily for the benefit of creditors. The apportionment and distribution made by the trustees, as already appears, conferred no right upon the legatees, except as checks were given in per-

formance and the checks conferred no right that was capable · of enforcement against the bank.

Without considering any of the other points urged upon us, we think that the plaintiff, according to the record now presented, had no title to the debt against the defendant, created by the deposits of the executors. It follows that the judgment should be reversed and a new trial granted, with costs to abide the event. .

All concur.

Judgment reversed.