JOHN F. BULLMASTER, Respondent, v. CITY OF ST. JOSEPH, Appellant.

Kansas City Court of Appeals, March 22, 1897.

1. **Municipal Corporations:** NEGLIGENCE: PUBLIC POWERS v. PRIVATE POWERS: ELECTRIC LIGHTING PLANT. A municipal corporation exercising the powers which are public and governmental functions delegated to it by the state exclusively for the public good, is not liable for the negligence of its officers; but in exercising powers which are of a proprietary character and conferred for private advantage of a municipality, it is liable for negligence as private corporations and is, therefore, liable for negligence in the construction and repair of its electric lighting plant.

2. **Master and Servant:** PLACE OF WORKING: KNOWLEDGE OF MASTER: DEFENSE: TIME TO REPAIR. If the master knows, or by the exercise of ordinary care might have known, of the unsafe place provided for his servant to work, he is liable if injury ensues by reason of such defect, and ignorance of the defect is no defense where the master could with reasonable care have known; nor is the master entitled to time to repair after knowledge of the defect.

*Appeal from  the DeKalb  Circuit  Court.*—HON. A. M. WOODSON, Judge.

AFFIRMED.

*W. K. Amick* for appellant.

(1)   Defendant's instruction number 1 in the nature of a demurrer to the evidence should have been given. The rule of law is well settled in this state that

a municipal corporation is not liable for the negligence
of its officers in the execution of such powers as are
conferred on the corporation or its officers for the public
good. *Ulrich v. City of Louis*, 112 Mo. 139; *Mur-
taugh v. City of St. Louis*, 44 Mo. 479; *Heller v. Mayor,
Aldermen and Citizens of Sedalia*, 53 Mo. 159; *McKen-
na v. City of St. Louis*, 6 Mo. App. 320; *Armstrong v.
City of Brunswick*, 79 Mo. 321; *Carrington v. City of
Kansas*, 89 Mo. 208, *loc. cit.* 215; *Hill v. Boston*, 122
Mass. 334; *Snider v. St. Paul*, 53 N. W. Rep. 763;
*Hayes v. City of Oskosh*, 33 Wis. 314; *Wilcox v. City of
Chicago*, 107 Ill. 334; *Fischer v. City of Boston*, 104
Mass. 94; *Van Horn v. City of Des Moines*, 63 Iowa,
447; Dillon, Mun. Corp. [3 Ed.], sec. 774. The relation
of master and servant does not exist. *Pettingil v. City
of Chelsea*, 161 Mass. 404. The power to provide for
the lighting of the public streets, etc., was conferred
upon the city for the public good. No compensation
was received and no pecuniary benefit was derived
therefrom. R. S. Mo. 1889, sec. 1255, subdiv. 14.
(2) The court erred in giving instruction number 1.
The first paragraph requires "the defendant to furnish
plaintiff a reasonably safe place to work and keep
the same in a reasonably safe condition." The law,
even in the case of a private corporation, only
"requires the master to use ordinary care in providing
the servant with a reasonably safe place to perform the
duties of his employment." (3) The last paragraph of
instruction number 1 is wholly wanting, in that it
permits a recovery, providing the city knew, or by
reasonable diligence might have known of the condition
of the wall, entirely leaving out the element, that after
the city had that knowledge it still was entitled to a
reasonable length of time to make repairs after it knew
of the defect.

*J. F. Woodson, C. O. French,* and *Thos. F. Ryan* for respondent.

(1) There is no special provision in the charter which authorizes or directs the erection or operation of an electric light plant. Such plant is a private venture of the city for its own advantage and the doctrine of *respondeat superior* applies to its employees. *Bacon v. City of Detroit,* 94 Mich. 601; Dillon, Mun. Corp. [4 Ed.], sec. 974; *Hannon v. City of St. Louis,* 62 Mo. 313. But even if authority were specially given by charter the doctrine applies. *Donahew v. Kansas City,* 38 S. W. Rep. 571. (2) The city in owning and operating such a plant acts in its ministerial capacity as distinguished from its judicial or legislative capacity and the same doctrine applies. Jones, Neg. Mun. Corp. 267; Dillon, Mun. Corp. [4 Ed.], secs. 980 and 1049; *Thurston v. St. Joseph,* 51 Mo. 510; *Donahew v. Kansas City,* 38 S. W. Rep. 571. (3) Municipal corporations are liable for the improper use and management of their property to the same extent and in the same manner as private corporations and natural persons. Dillon, Mun. Corp. [4 Ed.], sec. 985; *Flori v. St. Louis,* 3 Mo. App.; 69 Mo. 391; *Carrington v. St. Louis,* 89 Mo. 216; *Fuchs v. St. Louis,* 133 Mo. 168. (4) The instructions were not prejudicial and the verdict was insufficient in amount. *Taylor v. Iron Co.,* 133 Mo. 363.

SMITH, P. J.—The defendant, a city of the second class, under the authority conferred by subdivision 14, of section 1255, owned and operated a steam plant for the purpose of providing electricity for the lighting of its streets, parks, public buildings, etc. The plaintiff, a fireman at said plant in the employment of the defendant, while in the performance of the duties of his employment was seriously hurt by slipping and falling

from a defective and unsafe wall over and along which it was necessary for him to walk in order to reach the top of the boilers where there was a leaking valve, to which he had been required to give attention. There was a trial resulting in judgment for plaintiff and from the latter the defendant has appealed.

The principal error assigned and relied on by the defendant for a reversal of the judgment is the action of the trial court in disallowing its demurrer to the evidence.

If the authority conferred upon the defendant by the statutory provision to which reference has already been made, to provide for the lighting of its streets, parks, public buildings, etc., is for the exclusive benefit of the public, then it is not liable for the negligence of its officers in the execution of such power. This rule has been asserted and enforced by the appellate courts of this state in many cases. *McKenna v. St. Louis*, 6 Mo. App. 320; *Murtaugh v. St. Louis*, 44 Mo. 479; *Hannon v. St. Louis*, 62 Mo. 313; *Armstrong v. Brunswick*, 79 Mo. 319; *Keating v. Kansas City*, 84 Mo. 415; *Keeley v. Kansas City*, 87 Mo. 103; *Carrington v. St. Louis*, 89 Mo. 208; *Ulrich v. St. Louis*, 112 Mo. 136; *Donahew v. Kansas City*, 38 S. W. Rep. 571. But the above cited cases with much unanimity further declare that where the officer or servant of a municipal corporation is in the exercise of a power conferred upon it for its private benefit and an injury ensues from the negligence or misfeasance of such officer or servant the municipality is liable to the same extent as in the case of private corporations or parties. As well said by the learned judge who delivered the opinion in *Donahew v. Kansas City, supra:* "It is sometimes a difficult matter to draw the line of demarkation between what acts of a municipal corporation are for the benefit of the

*Note (margin):* MUNICIPAL corporations: negligence: public powers v. private powers: electric lighting plant.

public and those which are for the private benefit of
the corporation.'' The distinction is nowhere more
clearly and tersely noted than in *McKenna v. St. Louis,
supra.* It is there stated: ''Municipal corporations are
considered by law in two aspects. In one their func-
tions are chiefly ministerial, and relate to corporate in-
terests only. These include the making and improv-
ing of streets, the construction of sewers and other
improvements, and keeping them in repair, the hold-
ing of property for corporate purposes, etc. But as to
these matters of strictly corporate interests there are
often duties to be performed of a legislative or judicial
character. In the other aspect, the corporation is re-
garded as holding a *quàsi* delegated sovereignty for the
preservation of the public peace and safety and the
prevention of crime. This includes the maintenance
of a police force, the appointment of officers charged
with the public health, the establishing of regulations
for the suppression of vice and other matters of public
concern in which all the people have a common inter-
est which it is the chief end of every good government
to protect. Keeping the peace, enforcing laws and
ordinances, preserving the public health, preventing
fire, punishing criminals and wrongdoers, caring for
the poor, and educational work are questions within
the province of the municipality as a governmental
agency and upon these and similar questions they act
without responsibility.''

In *Donahew v. Kansas City* it is said: ''There are
ordinarily many preliminary questions to be settled
before the details of any public work can be arranged.
These are questions which call into force the govern-
mental powers of the corporation. They concern ordi-
narily the expediency of doing the proposed work, and
the general manner in which it shall be done. And
upon these and similar questions municipal corpora-

tions act without responsibility. It is for them to decide in what manner they shall exercise their discretionary and judicial powers and they are under no liability because of their decisions upon these questions. But as soon as a corporation has determined to construct a public work it enters upon an undertaking which in all its details should be subordinated to the rule requiring the use of care, for the work is ministerial.'' And it has been held that the construction of sewers and keeping them in repair according to the general plan adopted are simply ministerial duties and for any negligence in constructing or keeping them in repair the municipality is liable to any person thereby injured. *Johnston v. Columbia*, 118 U. S. 19; *Thurston v. St. Joseph*, 57 Mo. *supra*. In *Whitfield v. Town of Carrollton*, 50 Mo. App. 98, it was said by us that: ''A town or city holding and dealing with property as its own, not in the discharge of a public duty, nor for the *direct or immediate* use of the public, but for its own benefit by receiving the rents or otherwise in the same way as a private owner might, is liable to the same extent as he would be for negligence in the management or use of such property to the injury of others.'' But there is a distinction between acts done by a city in the discharge of a public duty and acts done for what is called a private advantage or emolument. *Hill v. Boston*, 122 Mass. 344; *Oliver v. Worcester*, 102 Mass. 489; *Thayer v. Boston*, 19 Pick. 511; *Bailey v. Mayer*, 3 Hill, 531; *Society v. Philadelphia*, 31 Pa. St. 185. It is said in *Bailey v. Mayer, supra*, if powers are granted for public purposes *exclusively* they belong to the corporate body in its political or municipal character, but if the grant was for the purpose of private advantage and emolument, though the public may derive a common benefit therefrom, the corporation *quoad hoc* is to

be regarded as a private company. It stands on the same footing as would any individual or body of persons upon whom the like special franchises have been conferred, citing *Dartmouth College v. Woodward*, 4 Wheat. 668. And to the same effect is *Hannon v. St. Louis*, 62 Mo. *loc. cit.* 318.

In *Ulrich v. St. Louis*, *supra*, *loc. cit.* 148, quoting from 1 Shearman & Redfield on Negligence, section 253, it was said: "To the extent * * * local or special organizations possess and exercise governmental powers, they are, as it were, departments of state; as such, in the absence of any statute to the contrary, they have the privilege and immunity of the state; they partake of the state's prerogative of sovereignty in that they are exempt from private prosecution for the consequences of their exercising or neglecting to exercise the governmental powers they possess. To the extent that they exercise such powers their duties are regarded as due to the public, not to individuals; their officers are not agents of the corporation, but of the 'greater public,' the state. No relation of agency existing between the corporation and its officers with respect to the discharge of these public governmental duties, the corporation is not responsible for the acts or omissions of its officers therein. This is no more than an application and proper extension of the rule that the state is not liable for the misfeasance of its officers." "In this case," further says the court, "the city was simply in the exercise of its public governmental function delegated to it by the state, from the time the first arrest was made until the injury occurred, in enforcing its ordinance enacted to preserve the peace, safety and good order of society, and is no more liable for the negligence of its officers in this respect than the state would be liable for the negligence of its highest officers in the performance of the same class of duties."

In Dillon on Municipal Corporations [4 Ed.], section 66, it is said that a municipal corporation "possesses a double character: The one governmental, legislative or public; the other in a sense proprietary or private * * *. In its governmental or public character, the corporation is made by the state one of its instruments, or the local depository of certain limited and prescribed political powers, to be exercised for the public good on behalf of the state rather than for itself. In this respect it is assimilated in its nature and functions to a county corporation, which, as we have seen, is purely part of the governmental machinery of the sovereignty which creates it * * *. But in its proprietary or private character, the theory is that the powers are supposed not to be conferred primarily or chiefly from considerations connected with the government of the state at large, but for private advantage of the compact community, which is incorporated as a distinct legal personality or corporate individual; and as to such powers and to property acquired thereunder, and contracts made with reference thereto, the corporation is to be regarded *quoad hoc*, as a private corporation or at least not public in the sense that the power of the legislature over it, or the rights represented by it, is omnipotent."

The authorities from which we have quoted and others to which we have referred illustrate and make plain the distinction between those powers of a municipal corporation which are public governmental functions delegated to it by the state and conferred upon it exclusively for the public good, such, for instance, as that to maintain a city workhouse or hospital, or that to abate, prevent and remove nuisances, or that to establish a fire department and to pass ordinances to extinguish fires, or those relating to the public peace and good order, or the suppression of vice and immor-

ality, or preserving the public health, caring for the poor, or providing for education, or those relating to the general welfare coupled with judicial or legislative discretion touching the manner or mode of their exercise and the like; and those powers which are of a proprietary or private character which have been conferred for the private advantage of the municipality, as, for instance, those to construct and maintain sewers, to provide water for the use of the city and its inhabitants, or to make and repair streets and other like powers granted for private municipal advantage and emolument. The officers of the municipality exercising the former class of powers are to be regarded as agents of "the greater public," while those exercising those of the latter are the agents of the lesser public. When the agents of "the greater public" are guilty of nonfeasance or misfeasance in the exercise of any one of the former class of powers the principles of the maxim of *respondeat superior* do not apply, but the maxim does apply when the agents of the lesser public are guilty of nonfeasance or misfeasance in the exercise of the latter class of powers.

It is plain that the power conferred by the statute upon defendant to provide for lighting its streets, parks, public buildings, etc., belongs to the latter class of powers. The electric plant in question was erected and is maintained for the defendant's private advantage, and for that reason it occupied no different legal relation to those employed by it in carrying on said plant than if it had been a private corporation or individual. The general public of the state at large has no interest in the plant any more than it has in a system of waterworks owned by a city and by which it furnishes water to its citizens. The defendant, as the owner and operator of its electric light plant, is entitled to all the rights and subject to all the liabilities that would attach at

common law were it a private corporation or natural person. The circuit court does not therefore err in overruling the defendant's demurrer.

II. The defendant objects that the plaintiff's first instruction which, amongst other things, declared that if the defendant actually knew that the wall and walk from which plaintiff fell was defective or unsafe or that it had been so defective or unsafe for such a length of time before plaintiff was injured, that by the exercise of reasonable diligence it could have known the defective and unsafe condition thereof, that notice would be presumed, is erroneous and should not have been given. The rule of law applicable in cases of this kind is that if the master knew or by the exercise of ordinary care might have known of the defective or unsafe appliance or place provided for the servant's use in carrying on the work assigned to him, the master is liable if injury results. *O'Mellia v. R'y*, 115 Mo. 205; *Hamilton v. Mining Co.*, 108 Mo. 364; *Dagharsh v. R'y*, 103 Mo. 570. If the appliance or place is not so dangerous as to threaten immediate injury, or the injured servant might reasonably have supposed that he could with care and caution have safely used the same, he will not be precluded from recovering though he have knowledge of the dangerous condition thereof. *O'Mellia v. R'y, supra; Mahoney v. R'y*, 108 Mo. 191.

The defendant contends that the said instruction is defective in omitting therefrom the element that after the city had knowledge of the defective condition of the walk and wall that it was entitled to a reasonable length of time thereafter to make repairs. This rule, while applicable in some cases (*Barr v. Kansas City*, 105 Mo. *loc. cit.* 557), is inapplicable to a case like this where the relation of master and servant exists. It is not necessary in order to entitle a servant to recover for in-

*(margin note: MASTER and servant: place of working: knowledge of master: defense: time to repair.)*

juries received from defective machinery or appliances that he should show that the master had actual knowledge of the defects. It is enough if he shows that he ought to have known of them and might have known of them by the exercise of reasonable and proper care on his part by examining and inspecting them. It is the duty of the master to exercise reasonable and proper watchfulness to see that the machinery, appliances, etc., are kept in proper condition, and that the premises are not only fit for carrying on the business but that they are kept so. Wood on Master and Servant, sec. 329. And ignorance by the master of defects in the instrumentalities used by his servants in performing his work is no defense to an action by one who has been injured by them, when by the exercise of proper care and inspection the master could have discovered and remedied the defects or avoided the danger incident therefrom. Shearman & Redf. on Negligence, sec. 194; *Benzing v. Steinway*, 101 N. Y. 574. The instruction, while perhaps subject to some slight verbal criticism, was not prejudicial in its enunciation to the defendant.

The evidence tended to show that the plaintiff had been in the employ of the defendant for only about ten days previous to the time the injury happened and that until then he had never been on top of the boilers and knew nothing of the condition of the wall on which it was necessary for him to walk and from which he fell. The wall had been in the condition it then was for some time, and as to whether the defendant knew of its defective condition or could have known it by the exercise of reasonable care were issues of fact which were fairly left to the jury by the plaintiff's instruction.

The other errors assigned have been examined and found without merit. It results that the judgment must be affirmed. All concur.