PEOPLE v. FOWLER.

(Supreme Court, Trial Term, New York County. February, 1914.)

1. BILLS AND NOTES ⬅⮞198—INDORSEMENT—EFFECT.
    Where a check was indorsed by the writing of the payee's name on the back, title passed to the indorsee.
    [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 465–467, 473; Dec. Dig. ⬅⮞198.]

2. BANKS AND BANKING ⬅⮞127—DEPOSIT OF·CHECKS—EFFECT.
    Where a properly indorsed check is deposited in a bank, the bank, in the absence of special agreement, becomes the owner of the check, agreeing to pay the amount at the purchaser's request.
    [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 304, 310; Dec. Dig. ⬅⮞127.]

3. CRIMINAL LAW ⬅⮞97—JURISDICTION—PLACE OF OFFENSE.
    Defendant by threats induced a contractor residing in another county to give him a campaign contribution. The check was delivered at the con-

⬅⮞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tractor's place of business, and defendant thereafter carried it to New York county, where the payee indorsed it and it was deposited in a bank. Thereafter the bank's correspondent collected the amount of the check from the bank on which it was drawn. *Held* that, whether the bank be treated as the owner of the check or as agent of the payee, no money was acquired in New York county, and hence that county did not have jurisdiction of a prosecution for extortion.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 177–189, 191; Dec. Dig. ☜97.]

4. CRIMINAL LAW ☜97—JURISDICTION—PLACE OF OFFENSE.

In such case New York county could not claim jurisdiction under Code Cr. Proc. § 134, on the theory that the acts committed therein were requisite to the commission of the crime, for the check need not have been negotiated or deposited in that county.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 177–189, 191; Dec. Dig. ☜97.]

Everett Fowler was charged with extortion. On demurrer to the indictment. Demurrer sustained.

Charles S. Whitman, Dist. Atty., of New York City (John Kirkland Clark, Asst. Dist. Atty., of New York City, of counsel), for the People.
Martin W. Littleton, of New York City, for defendant.

DAVIS, J. This is a demurrer to an indictment (No. 968491½) charging the defendant with the crime of extortion. The grounds of the demurrer are as follows: (1) That the grand jury by which it was found had no legal authority to inquire into the crime charged, by reason of its not being within the local jurisdiction of the county of New York, as appears on the face of the indictment. (2) That the crime set forth in the indictment was committed in the county of Onondaga and the county of Cortland, and not within the jurisdiction of this county, as it appears upon the face of the indictment. (3) That the indictment does not show that the crime of extortion charged therein was committed partly in New York county, and does not show that any acts or effects thereof, constituting or requisite to the commission of the offense of extortion, occurred in New York county.

The indictment is as follows:

"The grand jury of the county of New York, by this indictment, accuse Everett Fowler of the crime of extortion, committed as follows:

"Heretofore, to wit, on the sixteenth day of June in the year of our Lord one thousand nine hundred eleven, a certain contract and agreement was made and executed by and between one Seneca P. Hull, of the city of Cortland, in the county of Cortland, and state of New York, as party of the first part, and the people of the state of New York, by the state commission of highways, as party of the second part, wherein and whereby the said Seneca P. Hull agrees to construct and complete the improvement of a certain section of the public highway in the said county of Cortland, known as the 'Truxton-De Rayter, Part One, State Road, No. 5141,' in accordance with certain specifications and plans referred to in the said contract and agreement, and the said people of the state of New York, by the said state commission of highways, agreed to pay the said Seneca P. Hull therefor the sum of twenty-three thousand five hundred sixty-eight dollars and thirty-two cents, and at all the times thereafter herein mentioned the said contract was outstanding and in full force and effect, and the said Seneca P. Hull was engaged in the business and occupation of constructing and completing the said improvement of the said

section of the said public highway, employing, engaging, and using therein and therefor divers persons as laborers and workmen.

"And at all the times herein mentioned the said Seneca P. Hull was a depositor in a certain bank having its office in the said city and county of Cortland and there engaged in the transaction of the business of banking, and known as the National Bank of Cortland, and had a check account, so called, with the said bank.

"And on the 31st day of October, in the year aforesaid, and at all the times thereafter herein mentioned, one Norman E. Mack was the chairman of the Democratic state committee of the state of New York and one Arthur A. McLean was the treasurer of the said Democratic state committee, and the said Arthur A. McLean, as such treasurer, was a depositor in and had a check account, so called, with a certain other bank having its office in the borough of Manhattan of the city of New York, in the county of New York aforesaid, and there engaged in the transaction of the business of banking and known as the Fourth National Bank of the City of New York, which said check account stood in the name of Arthur A. McLean, treasurer.

"And on the said 31st day of October, in the said year, and at all the times thereafter herein mentioned, there was a deposit in the said National Bank of Cortland to the credit of the said Seneca P. Hull, and subject to be drawn from the said bank by the check of him, the said Seneca P. Hull, more than two hundred and fifty dollars.

"And on the said 31st day of October, in the said year, the said Everett Fowler, at the city of Syracuse, in the county of Onondaga, in the said state of New York, did make certain oral threats to the said Seneca P. Hull to do an unlawful injury to the property of him, the said Seneca P. Hull, that is to say, to injure, annoy, harass, and obstruct him, the said Seneca P. Hull, in his said business, and to prevent him from properly, freely, and profitably carrying on the same, and especially unlawfully to harass, interfere with, obstruct, and impede him, the said Seneca P. Hull, while he should be so as aforesaid engaged and employed in constructing and completing the said section of the said public highway, and to prevent and hinder him from properly performing the work, labors, and duties necessary and requisite therefor, and to prevent the acceptance by the state commission of highways of the performance of the work done by the said Seneca P. Hull under and in pursuance of the said contract and agreement, and to prevent him, the said Seneca P. Hull, from receiving payment for the said work when such payment should be due, unless he, the said Seneca P. Hull, should give to the said Democratic state committee the sum of two hundred fifty dollars, by means of which oral threats so then and there made by the said Everett Fowler, as aforesaid, fear was then induced in and on the part of him, the said Seneca P. Hull.

"And the said Everett Fowler did then and there, to wit, on the said 31st day of October, at the said city of Syracuse, in the said county of Onondaga, obtain from the said Seneca P. Hull, with his consent, which consent was then and there by him, the said Everett Fowler, induced by a wrongful use of fear, to wit, fear on the part of the said Seneca P. Hull, then and there by him, the said Everett Fowler, induced by means of the threats aforesaid, one written instrument and order for the payment of money, to wit, a certain check and order of him, the said Seneca P. Hull, drawn on the said National Bank of Cortland, dated on the said October 31, 1911, and directing the said National Bank of Cortland to pay to the order of the said Norman E. Mack the sum of two hundred fifty dollars, which check and order was then and there in the words and figures following; that is to say: 'No. 785, Cortland, N. Y., October 31, 1911. The National Bank of Cortland. Pay to the order of Norman E. Mack two hundred fifty ($250) dollars. Safe Deposit Boxes. S. P. Hull'—and which said check and order the said Seneca P. Hull did on the said 31st day of October, 1911, at the said city of Syracuse, in the said county of Onondaga, with his consent, induced by means of such fear as aforesaid, deliver to the said Everett Fowler.

"And the said Everett Fowler having so as aforesaid received the said check and order from the said Seneca P. Hull on the said thirty-first day of October, in the said county of Onondaga, did thereafter, at the borough of Manhattan of the city of New York, in the county of New York aforesaid, cause

the same to be indorsed by one Norman E. Mack, the payee named therein, who thereafter, by the procurement of the said Everett Fowler, at the borough of Manhattan and county of New York aforesaid, did indorse the said check by writing upon the back of the same his name as follows, to wit, Norman E. Mack.

"And afterwards, to wit, on the second day of November, in the said year, the said Everett Fowler did cause and procure the said check so indorsed as aforesaid to be deposited, and the said check so indorsed as aforesaid was deposited, in the borough of Manhattan of the city of New York, in the county of New York, in the said Fourth National Bank of the City of New York to the credit of the aforesaid account in the said bank of the said Arthur A. McLean, as treasurer of the said Democratic state committee.

"And the said check so indorsed was received by the said Fourth National Bank of the City of New York at the said borough of Manhattan and county of New York aforesaid on the said second day of November, and the said Fourth National Bank of the City of New York did thereupon credit the account of the said Arthur A. McLean as such treasurer as aforesaid with two hundred fifty dollars, the amount thereof, and did thereupon forward and transmit the said check to a certain bank called the New York State National Bank of Albany, New York, in the county of Albany, in the said state, which said New York State National Bank of Albany, New York, was then and there a correspondent of the said Fourth National Bank of the City of New York, in order that the said New York State National Bank of Albany might present the same for payment to the said National Bank of Cortland, and did then and there debit the said New York State National Bank of Albany, New York, with two hundred fifty dollars, the amount thereof.

"And the said New York State National Bank of Albany, New York, having received the said check from the said Fourth National Bank of the City of New York, did then and in the said county of Albany credit the account of the said Fourth National Bank of the county of New York with two hundred fifty dollars, the amount thereof, and did thereupon transmit and present the said check for payment to the said National Bank of Cortland, in the city and county of Cortland, which said last named bank did thereupon, on the sixth day of November, in the said year, pay the amount of the said check to the said New York State National Bank of Albany, New York, and charge the amount of the said check to the account of the said Seneca P. Hull.

"And afterwards, at a time to the grand jury aforesaid unknown, the said sum of two hundred fifty dollars, so credited by the said Fourth National Bank of the City of New York to the account of the said Arthur A. McLean, treasurer, upon the deposit of the said check, was at the borough of Manhattan of the city of New York, in the county of New York aforesaid, drawn from the said Fourth National Bank of the City of New York by checks drawn by the said Arthur A. McLean, as treasurer, upon the said account in the said Fourth National Bank of the City of New York and used for the purposes and objects of the said Democratic state committee.

"And so the grand jury aforesaid do say that the said Everett Fowler, at the borough of Manhattan of the city of New York, in the county of New York aforesaid, the said sum of two hundred fifty dollars in money, lawful money of the United States of America and of the value of two hundred fifty dollars, of the goods, chattels, and personal property of the said Seneca P. Hull, feloniously and extorsively did obtain from the said Seneca P. Hull, with his consent so as aforesaid induced by the wrongful use of fear on the part of the said Seneca P. Hull, to wit, fear induced by the aforesaid threats made by the said Everett Fowler to the said Seneca P. Hull, against the form of the statute in such case made and provided, and against the peace of the people of the state of New York and their dignity."

[1-3] By reference to the last paragraph of this indictment it will appear that the charge upon which the people seek to try the defendant is the extortion from Hull in New York county of $250 in money. The facts upon which the people mainly rely to support jurisdiction in New York county are the extortion by defendant of Hull's check

on the National Bank of Cortland for $250 in Onondaga county on October 31, 1911, the procuring of Mack's indorsement of the check in New York county on the same date, and the procuring of its deposit by McLean in the Fourth National Bank of the City of New York on November 2d, the subsequent payment of the check by the National Bank of Cortland out of Hull's account therein on November 6th, and the crediting of McLean's account in the Fourth National Bank with the amount of the check on November 2, 1911.

If these allegations amount in law to a charge that Hull's money was obtained in New York county, jurisdiction will lie in New York county, and this demurrer must be overruled. The theory upon which the indictment is drawn is disclosed in the brief of the learned district attorney used in opposition to the motion to quash the former indictment, which was superseded by the present one. He says:

"No money came into the defendant's hands in Onondaga county on October 31st, but money belonging to Hull did come into the possession of the defendant, through his agent, on November 2d, in New York county, where the check was deposited in the Fourth National Bank, and there the sum of $250 was set to the credit of defendant's agent. This placing of the sum of $250 to the credit of defendant's agent became final and complete when Hull's check reached the bank in Cortland on November 6th and the amount recited in the check was taken from his funds there."

The person referred to as defendant's agent is McLean. If the deposit by McLean of the check in the Fourth National Bank and the crediting of McLean's account with $250 was a transfer of Hull's money on November 2, 1911, in New York county, then, of course, jurisdiction will lie in New York county. We would then have a case where fear was wrongfully inspired and used in Onondaga county, and, as a result thereof, property obtained in New York county, and the grand jury of New York county would have the jurisdiction conferred by the first part of section 134 of the Code of Criminal Procedure; the crime having been committed partly in New York county and partly in another county, and therefore jurisdiction being in either county.

But, when we analyze this transaction of McLean with the Fourth National Bank, it is apparent that Hull's money did not come into McLean's hands. McLean deposited the check. By that act the Democratic state committee became a creditor of the bank to the amount of the check. In other words, the bank bought the check and paid for it out of its own property by crediting the account of the said state committee with the amount of the check, and the purchase was made in reliance upon the payment of the check by the Cortland bank, and in default thereof the repayment by the state committee of the amount paid by it. The title to the check passed to the bank on November 2d. Clearly the state committee got no money belonging to Hull from the Fourth National Bank in New York. Hull's money was obtained on November 6th in Cortland, where his check was paid. The form of the indorsement by McLean shows an intention to transfer ownership in the check to the bank. The first indorsement on the check was that of the payee, Mack, the second was McLean's, and w⋅

may assume from the language of the indictment that McLean's indorsement was in the usual form to transfer title to the bank.

In the case of Burton v. United States, 196 U. S. 283, 300, 301, 302, 303, 25 Sup. Ct. 243, 247 (49 L. Ed. 482), the court says:

"In the absence of any special agreement that the effect of the transaction shall be otherwise, * * * there is no doubt that its legal effect is a change of ownership of the paper, and that the subsequent action of the bank in taking steps to obtain payment for itself of the paper which it had purchased can in no sense be said to be the action of an agent for its principal, but the act of an owner in regard to its own property."

The court cited with approval the language used by Judge Andrews in Cragie v. Hadley, 99 N. Y. 131, 1 N. E. 537, 52 Am. Rep. 9, as follows:

"The general doctrine that upon a deposit being made by a customer in a bank, in the ordinary course of business, of money, or of drafts or checks received and credited as money, the title to the money, or to the drafts or checks, is immediately vested in and becomes the property of the bank, is not open to question (cases cited). The transaction in legal effect is a transfer of the money, or drafts, or checks, as the case may be, by the customer to the bank, upon an implied contract on the part of the latter to repay the amount of the deposit upon the checks of the depositor. The bank acquires title to the money, drafts, or checks on an implied agreement to pay an equivalent consideration when called upon by the depositor in the usual course of business."

See, also, Lyons v. Union Exchange National Bank, 150 App. Div. 493, 135 N. Y. Supp. 121.

I think it is clear that the defendant obtained no money of Hull, either directly or through any agent, in the county of New York. Even if we assume the Fourth National Bank of New York to be the agent of the defendant to collect the money from the Cortland bank, it does not follow that any part of the crime was committed in New York county. The act of collecting the money from Hull took place in Cortland, and the crime was completed in Cortland county when the check was paid by the Cortland bank. Hull's money remained in the Cortland bank until November 6th. Until his bank honored his check on that day Hull could have stopped payment on it. O'Connor, Rec'r, v. Mechanics' Bank, 124 N. Y. 324, 26 N. E. 816. Therefore it is obvious that the defendant could not have obtained Hull's $250 in New York City on November 2d, as alleged in the indictment. Nor was the character of the credit given to McLean by the Fourth National Bank on November 2d affected in any way by the payment of the check on November 6th in Cortland. The transaction still remained one in which title to the check had passed to the Fourth National Bank in return for its credit given McLean.

After the Fourth National Bank became possessed of the check, it transferred it by indorsement, presumably by delivery, to the New York State National Bank of Albany, and the latter bank, as owner of the check, presented it to the Cortland bank and received the payment of it on November 6th. Until November 6th Hull's account remained unaffected by the giving of the check, and on that date his $250 or his credit to that amount passed into the possession of the Albany bank, the then owner of the check. The theory that the Albany bank passed on the proceeds to the New York bank, and the New

York bank to McLean, either in form of money or in credit, has no support under the authorities cited above.

Neither the Dimick Case nor the Peckens Case, cited by the learned district attorney in opposing a motion to dismiss an indictment superseded by the present one, is in conflict with these views. In both of those cases the jurisdiction of the court was held because some of the false pretenses were made in the county where the venue was laid, and because in cases of larceny by false pretenses the making of the false pretenses is an essential part of the offense. The pretenses must be pleaded, and at least one of them must be proved as alleged, to warrant a conviction. People v. Peckens, 153 N. Y. 576, 47 N. E. 883; People v. Dimick, 107 N. Y. 13, 14 N. E. 178.

Nor is the case of People v. Lammerts, 164 N. Y. 137, 58 N. E. 22, in conflict with these views. The defendant Lammerts was county treasurer of Niagara county. He drew a check on his account as county treasurer in the Power City Bank of Niagara Falls. He personally presented the check to the bank, and with it purchased a draft from that bank on New York City, and used the draft to pay his personal debt. He was indicted and tried in Niagara county for a larceny of the money which he had used to purchase the draft. The defendant claimed that there was a variance between the proof and the crime charged, asserting that the only property shown by the evidence to have been misappropriated was the draft on New York. The court held that the money was the thing stolen, and not the draft; that the transaction was in effect one in which the cashier handed the money to Lammerts, and Lammerts handed it back immediately to the cashier to pay for the draft—the money being stolen the minute he made this wrongful use of it.

So, in the case at bar, when the last owner of the Hull check, the New York State National Bank of Albany, personally received payment of it in the Cortland bank, it must be deemed to have received $250 of Hull's money in Cortland county, but that money was not sent to the Fourth National Bank in New York, so far as it appears from any allegation in this indictment.

These considerations lead me to the conclusion that it does not appear from the indictment that the defendant committed the crime of extortion of the $250 partly in New York county and partly in another.

[4] It remains to determine whether the indictment alleges that "the acts, or effects thereof, constituting or requisite to" the commission of the crime of extortion as charged, occurred in the county of New York, thus giving that county jurisdiction. Section 134, Code of Criminal Procedure. Much that has been said above will apply to this latter inquiry.

The second part of section 134, Code of Criminal Procedure, refers (1) to the acts or effects thereof constituting the offense, and (2) to the acts or effects thereof requisite to the consummation of the offense. The acts relied upon by the people to give jurisdiction here are the delivery of Hull's check to Mack, the delivery of it to McLean, and McLean's indorsement and deposit of it in the Fourth National Bank of New York. It is obvious that none of these acts is a constitu-

ent element of the extortion. None of them constitutes any part of the offense.

Nor were any of these acts "requisite" to the consummation of the offense. The word "requisite" here means necessary, essential, indispensable. While these acts were steps taken by defendant to realize the value of the check, and could be shown on the trial, they were nevertheless mere incidents in the history of the check, and not necessary, essential, or indispensable to the consummation of the crime. The crime of exorting the money could be proved without reference to these acts in New York county.

The case of People v. Mitchell, 49 App. Div. 531, 63 N. Y. Supp. 522, affirmed 168 N. Y. 604, 61 N. E. 182, is not in conflict with these views. That was a case of larceny by a bailee. The indictment was found and tried in Erie county, where the contract of bailment was made, although the felonious conversion of the property occurred in Niagara county. It was indispensable to a conviction under the indictment that the people should allege and prove the bailment. The court therefore held that the act of the defendant, by which he became bailee and obtained possession of the property, was one of the acts requisite to the consummation of the offense, and that therefore the offense was triable in Erie county, as well as in Niagara county. It was held to be indispensable in the Mitchell Case to allege and prove the making of the contract of bailment in Erie county. Hence the jurisdiction in that county. It was not indispensable to the consummation of the offense here charged to send Hull's check to New York and cause its deposit there in the Fourth National Bank. The two cases are quite different.

In my opinion the allegations of the indictment sufficiently charge the crime of extortion of the *check* of $250 in Onondaga county and the extorting of the *money* partly in Onondaga and partly in Cortland, but none of the allegations is sufficient in law to make the offense of extorting the money triable in New York county.

The demurrer is sustained.