THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v. WILLIAM A. LEVY et al., Defendants.

County Court, Oneida County, October 30, 1924.

Crimes — conspiracy — indictment, charging violation of Penal Law, § 580, subd. 4, alleged defendants deposited false reports in mail in New York city for delivery in Oneida county concerning use of milk sold by Dairymen's League Co-operative Association — demurrer to indictment on ground that alleged crime is not within jurisdiction of Oneida County Court — crime of conspiracy may be prosecuted only in county in which either conspiracy was made or some " overt act," done in pursuance thereof, was performed — indictment proper and County Court of Oneida county has jurisdiction — indictment deemed to conform to Code of Criminal Procedure, §§ 275 and 276 — demurrer dismissed.

The crime of conspiracy within the meaning of subdivision 4 of section 580 of the Penal Law may be prosecuted only in the county in which either the conspiracy was made or some " overt act," done in pursuance thereof, was performed. The physical presence in the county where the plot is executed is not essential to the prosecution of the crime.

Accordingly, defendants' demurrer to an indictment, charging them with a violation of subdivision 4 of section 580 of the Penal Law and alleging a conspiracy on their part to defraud the Dairymen's League Co-operative Association, on the ground that the Oneida County Court was without jurisdiction to find indictments, should be dismissed, where the indictments charged the defendants with mailing from New York city certain false reports concerning the use made of milk sold by the league and addressed to the league in the city of Utica in Oneida county, since the acts of the defendants became effective and produced harm in Oneida county.

Defendants' demurrer to the indictment on the ground that it does not conform to sections 275 and 276 of the Code of Criminal Procedure should also be disallowed.

DEMURRER to indictment charging conspiracy under Penal Law, section 580, subdivision 4.

*Charles L. DeAngelis*, district attorney, and *John J. McGinty*, assistant district attorney, for the People.

*Virginius V. Zipris*, for the defendants Samuel Levy and another.

*William Ross Lee*, for the defendant William A. Levy.

HAZARD, J.   The indictment in this case charges the defendants with the crime of " misdemeanor, conspiracy under and in violation of subdivision 4 of section 580 of the Penal Law of the State of New York," alleging a conspiracy on the part of the four defendants, acting in concert at the city of New York to defraud the Dairymen's League Co-operative Association of the sum of $54,458.35, by means of certain false and fraudulent reports claimed to have been made

with the intent to cheat and defraud by certain false and fraudulent reports or statements concerning the use to which milk sold by the said Dairymen's League Co-operative Association had been put, viz., that it had been used for the manufacture of butter and cheese when in fact it had been sold in liquid form. It is alleged that the difference in price growing out of the alleged use in solid form amounted to the figures indicated, and that the false statements with reference to such use had been mailed in the city of New York to the Dairymen's League Co-operative Association at the city of Utica in Oneida county. The demurrer is upon three grounds, the first of which is " that the alleged crime set forth in the indictment is not within the local jurisdiction of the court, it having been committed, if at all, in the county of New York and not in the county of Oneida." We will consider this specification first.

It is fundamental that the crime of conspiracy as charged here must consist not alone of an agreement to do some criminal act, but also of an *overt act* performed by the conspirators, or some of them in pursuance of their illegal agreement, tending to carry out or perform their scheme or plan. It is also fundamental that the crime can be prosecuted only in that county in which either the conspiracy was made or some " overt act " done in pursuance thereof was performed. The demurrants insist with great earnestness that on the statements as contained in the indictment, the grand jury of the county of Oneida had no jurisdiction, and that whatever was done, if anything, was done in the county of New York. It is doubtless true that the alleged conspirators were not at the time of the alleged agreement within the county of Oneida; nor were any of the alleged fraudulent reports which were sent to the complainant by mail delivered by any of the defendants within the county of Oneida, at least not personally. They were, however, mailed to the complainant at Utica, which is in the county of Oneida, and we are thus brought squarely to what is the principal question in this case, viz., whether the mailing of such reports in the county of New York, addressed to the complainants at Utica, N. Y., constitutes an " overt act " within the county of Oneida. Very numerous cases have been cited by the defendants' counsel in support of their contention, some of which will be considered in detail later, and very extended argument made on the proposition; but after mature deliberation and the examination of the very numerous cases, I am convinced that their contention is untenable, and that the jurisdiction to find an indictment in this case does not lie wholly in New York county. I can explain my reason for this opinion in a few words: The depositing of the alleged false and fraudulent reports in the mail in the city of New York was

in itself inchoate, incomplete and ineffectual and had no effect and did the complainant no harm unless or until those reports were delivered to the complainants at Utica in Oneida county. The harm arose when these reports were delivered, and not until then. The act of the defendants did not take effect in New York county and produced no harm there, but it did take effect and did produce harm in Oneida county; and I thus reach the conclusion that the conspirators may be indicted for conspiring and sending false reports in the county to which those reports are sent and where they are received and acted upon. Nor do I have to make this decision upon my own judgment. There is abundant authority for it, some of which is in the highest court of the United States. See *Matter of Palliser*, 136 U. S. 257, 266, where the court said: " But it does not follow that he is not punishable at the place where the letter is received by the person to whom it is addressed; and it is settled by an overwhelmning weight of authority that he may be tried and punished at that place,    *    *    *." The court in that case cites as an illustration the case of a shot fired in one jurisdiction, striking a person in another jurisdiction, and says (p. 265): " The offender may be tried *where the shot takes effect,* and the only doubt is whether he can be tried where the shot is fired." The Court of Appeals of this state has decided what amounts to the same proposition in *Adams* v. *People*, 1 N. Y. 173, where a fictitious receipt was sent from the state of Ohio by an innocent messenger to the city of New York, and an indictment in the latter city was upheld. It will be noted that in that case what the defendants' counsel here calls the only " overt act " was performed outside the state of New York; but the Court of Appeals held that the receipt of the letter at its destination constituted the overt act in this state. See, also, the same case (*People* v. *Adams*) in 3 Denio, 190, a case which very clearly disposes of defendants' contention that they must have been personally present in Oneida county to give the grand jury in that county jurisdiction. See, also, *Hyde* v. *United States*, 225 U. S. 347, 349, where an indictment in the District of Columbia was upheld in a case where certain matter was mailed at Vancouver to Washington; and certain other documents were sent by messenger to the same destination.

Nor do I find anything in the cases cited by defendants' attorneys which can be said to establish a contrary view. For instance, *People* v. *Fowler*, 152 N. Y. Supp. 672, relied upon by the defense, was a case of a political contribution extorted from complainant in Cortland county, in the form of a check drawn upon a Cortland bank, and which was taken by one of the conspirators to New York city and there cashed. It was held that the grand jury in New York

county had no jurisdiction; but the reason is, obviously, that the defendant had no direct connection with the check's being delivered in New York city. The check was taken there by the extortionist on his own motion; and he might just as well have taken it to any of the other sixty-odd counties in the state. The court very properly held that the act of collecting the money from the victim took place in Cortland county, and the crime was completed in Cortland county. *People* v. *Summerfield*, 48 Misc. Rep. 242, would be an authority for prosecuting this indictment in New York county, but the question of whether that case might have also been prosecuted in Paris, France, which would be the analogy of our case, was not there discussed. Neither do I think it is held, as claimed that the physical presence in the county where the plot is executed is necessary. *People* v. *Arnstein*, 157 App. Div. 766, was a case where a conspiracy was alleged in New York state and certain false representations in letters and telegrams were sent from New York to Springfield, Mass., pursuant to which money was feloniously obtained in the states of Pennsylvania and Connecticut. It was held that under paragraph 1 of section 1930 of the Penal Law a crime was committed in New York; but the case does not discuss or decide whether prosecution might not have been had in Springfield, Mass. In *People* v. *Bihler*, 154 App. Div. 618, it is held in a case of mailing libelous matter in New York state to parties in Switzerland, that a publication was completed by the act of mailing; but that case does not decide whether the crime might or might not have also been prosecuted at the place where the communication was sent; although it discusses an English case in which it is held that the sender might have been indicted at either end of the mail route. See p. 625. *People* v. *International Nickel Co.*, 153 N. Y. Supp. 295, was a case where the defendant had a factory in Bayonne, N. J., from which certain " fumes, gases, and odors of a deleterious character escaped from said plant, and were *carried by the wind* into and upon Richmond county." It was indicted in that county for maintaining a public nuisance. Defendant demurred and the demurrer was sustained. The court said (p. 296): " It is the maintenance of the thing itself, the misuse of the plant, that is the nuisance." Defendants' counsel says that they " find comfort " in the reasoning of the opinion, but I do not think they are justified in so doing; in fact, I think the case may be used in support of the decision now being made. If we may assume that, attached to the plant in Bayonne was a huge pipe reaching across the river into Richmond county and conveying into that county the " fumes, gases and odors " from that plant, we would have a case analogous to this one. In other words, if there was a part of their plant which was

deliberately sending its " deleterious odors " into the county of Richmond, they would doubtless be indictable in that county, because they had deliberately created a nuisance there, just as the defendants here are charged with having deliberately sent their false reports into Oneida county. It is the question of where the mischief is *delivered* and not where it *starts from* that governs. *U. S.* v. *Comerford,* 25 Fed. Rep. 902, is cited by defendant. That was an indictment for depositing obscene matter in the mail. The court said (p. 903): " The act of depositing must be held to constitute the entire offense," and that is because of the wording of the statute. *U. S.* v. *Conrad,* 59 Fed. Rep. 458, was the case of an indictment for causing matter concerning a lottery to be sent by mail. The court held that the violation of law was completed without transmission or delivery, and, therefore, that the indictment could be tried only in the district in which the matter is mailed. Neither of these cases appears to me to be in point.

The second specification of the defendants is this: The indictment does not conform to sections 275 and 276 of the Code of Criminal Procedure, in that it does not contain a plain and concise statement of the act or acts constituting the crime, without necessary repetition, and does not comply with the requirements of section 276 in that it fails to set forth the acts charged as an offense, as required by law. The defendants' counsel with great industry and ingenuity have presented fifteen specifications under this branch of the demurrer. Without going too much into detail I will consider them briefly. The claim that the specifications (in the indictment) are vague, indefinite and uncertain and in no wise specific, and that the indictment fails to apprise the defendants with what they are precisely charged, I think is untenable. While the indictment does not contain the prolixity and endless repetition and reiteration of old-fashioned criminal pleading, it seems to me that it must be held to meet the requirements of section 275 of the Code of Criminal Procedure, which was designed to simplify pleadings in criminal cases, and which I think has had the effect of rendering obsolete some of the older cases cited by defendants. There is in the indictment a statement of the crime with sufficient certainty; of the people involved in the conspiracy; of the manner of the conspiracy; of the place where it was made; of its purpose, plan and scope; of the claimed false and fraudulent reports; of the criminal intent to deceive and defraud; and I think sufficient of the details and particulars of the claimed false representations.

It is true that the exact time when the conspiracy was made is not stated any more accurately than that it was during the months

of June, July and August, 1922; but in the nature of things the district attorney or the grand jury cannot, I think, be held in a case like this to greater particularity than that. Also, that the objection that the indictment does not state concretely that any milk was bought or sold, or from whom it was bought or sold, while it may be true, nevertheless the fact is that the indictment does state *generally* that milk was sold by the Dairymen's League Co-operative Association to the Levy Dairy Company. That no copies of the monthly contracts, if any, were attached to the indictment is not, I think, a serious defect. I cannot agree with the fifth contention that the connection between the Dairymen's League Co-operative Association, Inc., and the Levy Dairy Company does not appear, etc., for it does clearly appear that the former was selling milk in large quantities to the latter. I do not think that the exact or detailed amounts need necessarily be specified. Neither do I think that the specific terms of the sale need be specified in detail. If that were necessary the indictment in this case would be endless. Furthermore, that is a collateral or secondary matter, the primary charge of the matter being that fraudulent reports were made as to the uses of the milk sold during the three months in question. It is probably unnecessary to specify how many pounds or quarts of milk were involved. I think the " relationship between the said individuals (defendants) and the said Levy Dairy Company " is sufficiently detailed in the indictment; at least that they are officials connected with it is detailed; but probably that is not very material as the individuals are indicted and not the corporation; and I do not think that the individuals can escape criminal responsibility by saying that they acted as officials of that corporation.

It is true that the indictment does not state that the defendants, or any of them, *signed* the claimed fraudulent reports; but it does allege that they made or caused them to be made, which is the main thing. I assume they might even have been unsigned, without altering the situation any. The next and ninth specification is that the indictment fails to show why it was necessary to file said reports; and that it does not go into details of the classifications of milk and the details of the prices, which, I think, I must overrule. The gravamen of the charge is that, generally, the false report was made that milk was used for manufacturing instead of being sold as liquid; and while it might have been better pleading to have perhaps stated the amount of milk involved, the amount of the difference resulting from this alleged fraud is stated, and, I think, with sufficient certainty. The tenth allegation, that the indictment does not allege scienter is untenable on the facts. It does so allege. It seems to me that the eleventh claim, that the Dairymen's League

has not made a demand for payment of moneys due may be disposed of by the statement that this is a conspiracy case and not a larceny case. The next claim, that the indictment is defective in that so far as it fails to disclose the identity of the sender of the reports, I think, also, is untenable, because if it can be proven, as alleged, that defendants acting jointly *caused* the reports to be sent, it is quite immaterial who might have deposited them in the letter box. This, also, will dispose of the thirteenth objection. The fourteenth is untenable because, as above stated, the scienter is, I think, sufficiently alleged. And the fifteenth objection deals with the subject of an " overt act," which has been sufficiently heretofore discussed.

What has been heretofore said sufficiently disposes of the third specification of the demurrer, viz., " that the facts stated in said indictment do not constitute a crime."

The demurrer is, therefore, disallowed.