No. 24,057.

C. J. Grosse, *Appellant,* v. S. Burkholder, as Receiver for the Aulne State Bank, and Walter E. Wilson, as Bank Commissioner for the State of Kansas, *Appellees.*

SYLLABUS BY THE COURT.

1. Banks and Banking—*Bank Deposits—To Whom Credit May Be Given.* The evidence is held to support findings that money sent to a bank really belonged to the sons of the person to whom it was directed to be credited and that he knew of its being so entered as to be subject to their checks and that they were checking upon it.

2. Same—*Evidence.* Evidence objected to is held to have been admissible or nonprejudicial.

3. Same—*Money Sent Bank for Deposit—Credit Given to Whom Money Really Belonged.* Where a bank upon receipt of money with directions to credit it to one person credits it to another, whether or not in an action to recover it, brought by the person to whose credit it was directed to be entered, against the receiver of the bank, it was proper to instruct that proof that it belonged to the person to whom it was actually credited would constitute a complete defense, such an instruction is held not to require a reversal in the present case because of findings that the plaintiff, with knowl-

Grosse v. Burkholder, *Receiver*.

edge of the facts, acquiesced in the manner in which the entry was made and consented to its being checked out by the person to whose credit it was entered.

4. SAME—*Instructions*. Instructions given and refused are held not to have been erroneous.

5. SAME—*Special Findings*. Certain special findings are held not to be inconsistent with others or with the general verdict.

Appeal from Marion district court; CASSIUS M. CLARK, judge. Opinion filed December 9, 1922. Affirmed.

*R. L. King,* and *Roscoe King,* both of Marion, for the appellant.

*W. H. Carpenter,* and *W. R. Carpenter,* both of Marion, for the appellees.

The opinion of the court was delivered by

MASON, J.: On July 24, 1919, two cars of hogs (containing in all 141 head) were shipped, one in the name of C. J. Grosse and the other in the name of Louie Grosse, his son, from Aulne, Kan., to a commission company at Wichita, for sale. They were sold for $7,146.01 and the company sent $6,978.13 of this to the Aulne State Bank, with directions to credit it to C. J. Grosse. The bank cashier entered the check to the credit of "Grosse Brothers." On May 14, 1920, the bank commissioner took charge of the bank and later a receiver was appointed. On December 14, 1920, this action was brought by C. J. Grosse against the receiver to recover the amount of such deposit. The receiver defended on the ground that the hogs and their proceeds belonged to Grosse Brothers (Louie and Walter Grosse, sons of the plaintiff), and that the deposit was made to their credit and checked out by them with the knowledge and consent of the plaintiff. Judgment was rendered for the receiver, and the plaintiff appeals.

1. The plaintiff contends that the evidence did not support the judgment or any of the foregoing claims made by the receiver. There was evidence tending to show these facts:

C. J. Grosse lived on a farm owned by his wife, he having a life lease. His two unmarried sons, Louie and Walter, lived with him. The county clerk's records showed no personal-property statement from him for the year 1919. A grain company at Aulne sold about 1,000 bushels of corn in May, 1919, to Louie and Walter Grosse, whom the witness who made the sale called "Grosse Brothers," which was paid for by their checks and which they hauled to the Grosse farm, where there was a big bunch of hogs. The plaintiff on cross-

examination was asked if this corn went into the hogs that were shipped to Wichita, and failed to answer. When asked if he ever signed a check for the payment of feed that went into these hogs he first said—"I fed those hogs," and on being pressed gave a negative answer. This colloquy followed:

"Q. And you know, too, that they had borrowed money from this bank for the purpose of buying feed for these identical hogs, didn't you?

"Q. You did know. it, didn't you? A. I paid the boys for every bushel of corn.

"The Court: Mr. Grosse, notice the question.

"A. I don't know of any of their borrowing money to feed hogs.

"Q. Did you know where they got money to buy this feed? A. I haven't answered to that kind of question.

"Q. You say you paid them for the feed they bought for these hogs? A. Sure.

"Q. Where did you get that money? A. That is immaterial to you where I got that money."

Previous to the sale of the hogs no deposit had been carried in the bank in the name of the plaintiff, nor was there one at any time in the name of Louie Grosse. An account had for several years been carried in the name of "Grosse Brothers," checks against it being signed "Louie Grosse." The bank paid out the proceeds of the hogs on checks signed by Louie or Walter Grosse, the balance being reduced to $4.28 by May 4, 1920. The account was balanced occasionally. The checks were returned by the bank and a part, but only a part, of them were produced at the trial by Louie Grosse, bearing his signature. Walter Grosse produced a pass book issued by the bank in his name with a part of the checks the payment of which it showed signed by him. He testified that he did not remember what a check he had signed for $684 was given for, and that he did not remember hauling any corn to the farm in 1919. The plaintiff drew no check against the deposit of $6,978.13, and prior to the closing of the bank did not ask that it be paid to him or credited to him, and after that said nothing to the officials in charge, but put his claim in the hands of an attorney for collection in November, 1920. The plaintiff testified that he knew his sons were drawing on the bank but didn't know what for—that it was none of his business. In his personal-property tax statement sworn to by him on March 9, 1920, as containing all his property (specified as six dozen poultry, $60; stand of bees, $10; household furniture, $100; and interest in telephone company, $10), he did not include this deposit.

He did insert it, however, in his statement the next year, after this action had been begun. With a third son he signed a note to get $75 from the bank in March, 1920. A deposit slip running to Louie Grosse was produced by him, but the credit was shown to have been entered on the Grosse Brothers account. Louie Grosse denied knowing anything of such a firm as Grosse Brothers but admitted signing a tax statement in that way in 1920, which showed among other property 125 head of hogs, and other live stock, farm implements, etc. He said he sold his father several hundred bushels of corn for which he was paid in cash, taking some of it out in board, that he borrowed money from the bank to buy the corn and paid it shortly after the hogs were sold in Wichita, and that with regard to rent for keeping his own hogs on the place he fixed it up with his mother. When asked if he didn't know that the checks signed by him were charged upon the bank's books to Grosse Brothers he answered, "I don't care how they were charged."

We think from this evidence the jury were warranted in finding that the hogs and the money derived from their sale belonged to Louie and Walter Grosse and that the plaintiff had knowledge of the deposit being made in such manner as to be subject to their checks, and that they were checking on it, and that he consented thereto. The fact that the plaintiff did not include the deposit in his tax statement on March 1, 1920, tends strongly to show that it was not his. The fact that his sons did not do so either has no contrary tendency, for by that time the money had been largely spent. The few articles returned by the father in comparison with the sons suggests that the business done at the farm was largely theirs, rather than his. And incredulity was permissible in considering the story that this sum of $6,978.13 lay in the bank untouched, with no inquiry made concerning it, for some sixteen months, during the last six of which the bank commissioner and receiver were in control. Nor is it easy to believe that with the three Grosses living together, their business being so interwoven as the facts show, the sons could have checked out this considerable sum without the father being aware of what was going on.

2. Complaint is made of the admission of evidence that the plaintiff made no personal-property tax statement in 1918 and 1919. He testified that the hogs sold at Wichita were 10 or 11 months old and that he raised them himself. The fact that he did not make a tax return upon them in March, 1919, had some tendency to show that

he did not own them then. The circumstance that he returned no property in 1918 had some bearing upon the amount of business he was then doing, and therefore upon the plausibility of his version of the transaction under investigation. Complaint is also made of the admission of evidence of a chattel mortgage for $1,000 given by Louie Grosse, July 7, 1919, on 60 head of hogs. If it was not relevant as showing something of the character and extent of business done by Louie Grosse, or the likelihood of his having an interest in the hogs shipped to Wichita, it at any rate was not important enough for its admission to constitute reversible error.

3. The principal argument made against the judgment is based on the fact that the jury were instructed that if the hogs sold in Wichita "were the property of Grosse Brothers, or either of them, then and in that event the proceeds of such sale belonged to Grosse Brothers, and the plaintiff cannot recover, although such funds were sent to such bank with instructions to credit them to the plaintiff; provided, however, you find that they were by said bank actually credited to the persons to whom they belonged." It will be observed that this instruction standing alone authorized a verdict for the defendant even if the money had not been paid out to anyone but was intact in the hands of the receiver. The paying out of the money, although formally put in issue by virtue of the reply including a general denial, is hardly to be regarded as really in controversy, no attack having been made upon the bank records in this respect. Treating that question of fact, however, as a controverted one, and the instruction as applying even if the money was in the hands of the receiver, the case is not upon all fours with any of those supporting the rule expressed by saying that "a bank cannot defeat the suit of its depositor by showing adverse title in another" (1 Morse on Banks and Banking, § 342), or "the law presumes that a deposit belongs to the person in whose name it is entered, and the bank cannot question his right thereto." (7 C. J. 639; see, also, p. 666; 3 R. C. L. 529.) That rule is based largely upon the principle (sometimes spoken of as estoppel) that a bank should not be permitted to dispute its liability to one whom it has recognized as a depositor, and the decisions supporting it were made in cases where the deposit was entered as directed. Here, while the bank violated the directions given by the company which sent it the money, it never did recognize the plaintiff as its depositor or as the owner of the money; it credited it to Grosse Brothers, and if they

were the real owners, the question of its right to dispute the plaintiff's title is not the same as that passed upon in the cases referred to. Moreover, the rule in question is a general one applying "where there are no special circumstances leading to a contrary conclusion" (Note, 31 L. R. A., n. s., 764; see, also, 3 R. C. L. 530, note 4), and it is possible that a practice enforced as a matter of public policy against a bank while it is a going concern might not be necessary in dealing with a receiver who is a mere trustee for depositors, creditors and stockholders.

We need not determine the correctness of the instruction quoted, because the jury found specifically that by his silence the plaintiff consented that the money might be placed to the credit of Grosse Brothers, and that he consented that Grosse Brothers might check it out. These findings could not have been affected by the doubtful instruction, and they require a verdict for the defendant. In the situation which they indicate the circumstance that at the time of the trial the Grosse brothers were making no adverse claim to the ownership of the deposit does not militate against the defendant. The money having already been used by them, their present willingness to assist their father in obtaining a judgment for it is quite consistent with the family community of interest which the jury found to exist. The plaintiff having acquiesced in the checking out of the money by his sons cannot be heard now to demand it from the receiver. A bank may doubtless require a written order for the payment of deposits, but this does not prevent a depositor from precluding himself by his conduct from complaining of payments having been made on the check of some one else.

The findings referred to and the effect we give them render it unnecessary to discuss a number of errors assigned with regard to instructions given and refused, touching the same or related questions of law.

4. The jury were told that if the defendant had shown by a preponderance of the evidence any one of several sets of facts he was entitled to recover; and that otherwise the verdict should be for the plaintiff. This is complained of as an unfair method of statement—as overemphasizing the defendant's side of the case. We do not think it open to that objection.

The plaintiff requested an instruction that the relation of a bank and a depositor is that of debtor and creditor. We do not think that abstract statement would have aided the jury in their deliberations.

Another requested instruction contained the statement that a bank cannot pay out money deposited to the credit of one person to another without express authority. This is too strong a statement, as authority might be implied in various ways. Another requested instruction was to the effect that it is the duty of a bank to follow directions in crediting money received for deposit, and that its failure to do so will not relieve it from liability to the person for whose credit it was directed to be deposited. The statement is obviously correct, but we see no occasion for giving it to the jury, for no inference to the contrary could be drawn from the charge as given.

5. The jury in answer to special questions found that Grosse Brothers did not in that name draw any checks against the money in controversy, and that the plaintiff did not know that it was placed to the credit of Grosse Brothers. The plaintiff contends that these findings are inconsistent with those already referred to and with the general verdict. The fact that the checks on which the money was drawn out were not signed "Grosse Brothers," in view of the evidence that Louie Grosse who signed many of them had no account in his own name, is without serious significance. The finding that the plaintiff did not know that the proceeds of the hogs were placed to the credit of Grosse Brothers, in connection with the finding that by silence he consented to its being so placed, obviously meant that he did not know of the entry at the time it was made, although he afterwards learned of it and by acquiescence gave his consent.

The judgment is affirmed.