THE STATE, EX REL. GRAY, SUPT. OF BANKS, *v.* ALWARD.

(Decided January 9, 1933.)

*Messrs. Fitzgibbon, Black & Fitzgibbon,* for plaintiff in error.

*Messrs. Jones & Jones,* for defendant in error.

SHERICK, J.  By this action the superintendent of banks of the state of Ohio, as the liquidating officer of an insolvent, the Ohio State Bank of Washington Court House, seeks recovery of Edward E. Alward, as the maker of a draft in the sum of $5,000.  The draft was drawn in favor of J. A. Anders & Son upon Patterson & Co., of Boston.  The bank received this draft on May 5, 1930, and deposited it to "J. A. Anders & Son Wool Account."  Thereafter, on May 12, the bank closed its doors.  During this interval Anders & Son had checked thereon in the sum of $509.32. This sum Alward has now tendered in court.  Anders & Son, learning of the bank's failure, notified the drawee, who thereupon refused payment of the draft, which now has come to repose in the hand of the liquidating officer.

The defendant in error defends upon the theory that as general agent for the drawee firm he was but accomplishing his principal's business in the selection of a local agency in Anders & Son, and that he made the draft upon his principal for his principal's benefit, and thereby created a fund upon which his selected local agent might draw for the purchase of wool for his principal. He further advances that he, his principal, and the local agent, are in fact one and the same person, and that he is therefore entitled to set off the amount of the bank account opened against the demand of the plaintiff in error, which is now asserted against him as maker of the draft.

The trial court entertained the defendant's view and entered judgment accordingly. The plaintiff in error now says that in so doing the court erred.

One further pertinent fact appears in the agreed statement of facts. It is stipulated that the bank had full and complete knowledge of the entire arrangement and transaction at the time of accepting the draft and opening the account, and that Anders & Son had no interest in the account opened other than in that portion thereof which represented their commissions thereafter to be earned as purchasing agent.

The defendant in error lays the foundation of his right to set off both in law and in equity. In support of his claimed legal right he invokes the following provisions of Section 11321, General Code:

"When cross-demands have existed between persons under such circumstances that if one had brought an action against the other a counter-claim or set-off could have been set up, neither can be deprived of the benefit thereof by assignment by the other, or by his death. The two demands must be deemed compensated so far as they equal each other."

It is conceded to be the Ohio rule that ordinarily when moneys or commercial papers are deposited in bank such become the property of the bank and a re-

lationship then exists of debtor and creditor. This being true, the plaintiff in error or his predecessor in interest, that is, the bank, had a demand against Alward, as maker of the draft which it had accepted for deposit and upon which it had extended credit, immediately upon its non-acceptance by the drawee. The bank also had an assertable demand as against Anders & Son, who indorsed the instrument on its deposit and negotiation to the bank. And the fact that a bank has the right to charge back the amount of any such paper upon its dishonor as against its customer's account is not inconsistent with ownership in the bank.

And now considering the right or interest ordinarily possessed by a depositor, we find it held in *Bank of Marysville* v. *Windisch-Muhlhauser Brewing Co.,* 50 Ohio St., 151, 33 N. E., 1054, 40 Am. St. Rep., 660, and recognized in *Guaranty Trust Co., Exr.,* v. *State,* 36 Ohio App., 45, 172 N. E., 674, that the depositor has a "right of ownership in intangible chose in action;" that is to say, he has a right to have his checks, issued as against his account, cashed by the bank on presentation to it. And this he may legally demand of it.

It is stated in Section 96 of 5 Ohio Jurisprudence, at page 396, upon the authority of *Armstrong, Recr.,* v. *Warner,* 49 Ohio St., 376, 31 N. E., 877, 17 L. R. A., 466, that:

"The law gives to a bank a general lien upon the deposit * * * of its debtor, in its possession, and the right to set off, against deposits, claims owing to it by depositors, and depositors are given reciprocal rights in that they may have their deposits applied on the payment of their notes, upon the insolvency of the bank."

In the application of this rule we find that Ohio but subscribes to the weight of authority, as evidenced by the authorities listed in 3 Ruling Case Law, 529, Section 157, and in the note appearing in 25 A. L. R., 938.

Now we would test the presented situation in view

of the rules stated; and in so doing our inquiry must be directed to the peculiar situation in which we find the parties with reference to the customer's deposit. We recognize, as did the court in *Crawford* v. *McDowell, Recr.,* 124 Ohio St., 112, 177 N. E., 27, that "the right of set-off when asserted as against an insolvent person or corporation always involves a preference," but as said in *Armstrong, Recr.,* v. *Warner,* 49 Ohio St., 376, 31 N. E., 877, 17 L. R. A., 466, *supra,* "the allowance of such set-off, is not the creation of a preference by the bank, but an ascertainment merely of the just amount due on the debtor's obligation, and may be enforced against a receiver of the bank."

Now the superintendent of banks makes two claims: First, that Alward did not possess any deposit or cross-demand as against the bank that he could have asserted, for the bank account was in the name of Anders & Son, and if it was any one's, other than the bank's, it belonged to them or their principal, Patterson & Co.; and, second, that the true fact is that the sum represented by the deposit was the bank's money, and that at no time did the principal or agents have any interest therein, for the reason that the principal refused to honor its agent's draft.

Considering first the second contention, with which we are unable to agree, we remark that the bank did not accept the draft for collection only, but chose to receive this paper practically as if it were cash. It opened an account in favor of the subagents, against which it permitted and recognized their right to check. It voluntarily assumed the risk of its dishonor, which it provoked by its own insolvency; and it becoming apparent thereby that it could not keep its part of the agreement with its depositor, that is, to honor checks that might thereafter have been presented, it was but natural that it should expect that the contract of the maker and indorser made with it would not be carried out.

The fact that the bank took this chance, which it did not have to assume, cannot avoid its contract made with its depositor entered into at the time of the transaction. The bank gained possession of a valuable instrument, which was only made valueless by its own default, that is, its subsequent insolvency; and the customer received likewise a valuable consideration for its relinquishment and negotiation of the draft; that is, a chose in action, or a right to check against the account opened and a right to demand that the bank honor its checks thereon.

And now examining the claim first made. It is held forth that the depositor could not have sued to recover his deposit and that he cannot now do so. This is not sound. Had the bank refused to honor the depositors' checks during the week between deposit and insolvency, they could have sued. They then had an assertable demand. The bank's insolvency disturbed this right. It was held in *Upham* v. *Bramwell,* 105 Or., 597, 209 P., 100, 210 P., 706, 25 A. L. R., 919, that the fact that a depositor in an insolvent bank cannot maintain suit to recover his deposit does not deprive him of the right to set off the deposit on his indebtedness to the bank.

After insolvency the depositor could have sued the liquidator, and established his right or demand for set-off allowance, as was done in *Armstrong* v. *Warner, supra.* It is our view that the test is not in the right to sue, but in the right to assert his "cross-demands—if one had brought an action against the other." The depositor might have had a time certificate of deposit not yet due at time of insolvency. He could not sue to recover it until due, but to say he had not a legal demand would be absurd.

Does the fact the deposit account was opened in the name of Anders & Son, and not in the name of the defendant in error, forbid his assertion of a cross demand? We are of opinion that it does not. We recog-

nize the rule that deposits are ordinarily the property
of the person in whose name they stand. But we note
an exception to that rule, recognized in *Viets* v. *Union
Natl. Bank of Troy,* 101 N. Y., 563, 5 N. E., 457, 54
Am. Rep., 743; *Hemphill* v. *Yerkes,* 132 Pa., 545, 19 A.,
342, 19 Am. St. Rep., 607, and *Grosse* v. *Burkholder,
Recr.,* 112 Kan., 406, 211 P., 115, in that, under some
circumstances, money deposited to the credit of one
person may be shown to be the property of another.

Now from the admitted facts in this case, such a
circumstance presents itself. The bank well knew that
the fund represented by the draft was not the prop-
erty of Anders & Son, but the property of the drawee
of the draft, required of it by its general agent for the
consummation of the principal's business. By honor-
ing the draft the principal would have invested its
agent with possession of its moneys, for which Al-
ward, as agent, would have been responsible to his
principal. It is therefore easily seen that Alward had
a special interest in and right to possession of this
account. It was in fact his account, which for con-
venience only, known to the bank, was deposited in
the name of his subagent.

It is a universal rule of the law of agency that one
who accepts an agency is responsible to his principal
for the acts of his subagents, if he employs agents to
work under him; and the act of any such subagent is
regarded as the act of the agent himself, performed
by the subagent for the benefit of the agent directly.
Indirectly, of course, the act may be for the benefit of
the principal, as was intended in this instance.

The true conception of such a relationship is to es-
tablish an agency within an agency; that is, the sub-
agent is the agent of the general agent, who is in fact
his principal in many respects. It therefore follows
that the deposit made in the name of the subagent was
in fact the act and deposit of the agent, and was his
account created for his benefit.

And, viewing the act of negotiation of the draft to the bank by the subagent, we find the subagent by its act of indorsement contracting with the bank that its principal's obligation, that is, the draft, would be paid by him in the event that its drawee should dishonor it. The entire transaction being an open book to the bank, it could hardly be denied that the bank, had it remained solvent, might have charged off its account opened as against its dishonored paper on which credit was established, no matter whether the deposit was in the name of the agent or subagent.

We therefore conclude that cross-demands did exist between the bank and the defendant in error under such circumstances as contemplated by the statute, and that the defendant in error is legally and equitably entitled to a set-off. The plaintiff in error should accept the tender and thereby the two demands would equal and compensate each other.

*Judgment affirmed.*

GARVER, P. J., and LEMERT, J., concur.