**J. L. HUDSON CO. v. THOMAS.**

**SAME v. SCHRAM.**

Nos. 6107, 6108.

District Court, E. D. Michigan, S. D.
May 24, 1934.

Beaumont, Smith & Harris, of Detroit, Mich., for plaintiff.

Robert S. Marx, Lewis Levy, Frank E. Wood, and Wm. C. Kelly, all of Cincinnati, Ohio, for receivers.

LINDLEY, District Judge.

These two cases grow out of similar facts and the issues are substantially the same. Consequently the court disposes of both in one memorandum.

Plaintiff issued its serial 5 per cent. notes to the extent of $10,000,000. Simultaneously it executed an indenture by virtue of which certain rights and obligations were imposed upon the trustee therein named for the noteholders. Action to recover upon the notes, prior to their maturity, in case of default, was thereby vested in the trustee, unless after such default and demand upon the trustee for action by it made by holders of 25 per cent. of the principal amount of notes then outstanding, the trustee should fail to act. In such case, upon filing indemnity, the holders were vested with the right to sue.

The banks, now represented by defendant receivers, prior to their closing under the Michigan moratorium in late February, 1933, had purchased and owned parts of these notes as follows: The First National Bank, $252,000 of principal amount, and Guardian National Bank, $296,000. This ownership remained unchanged when, shortly afterward, the comptroller, because of insolvency of the two respective banks, appointed the receivers. At the time of closing of the two institutions, plaintiff had on deposit at the First National, payable to it, $3,353,782.08, and at the Guardian, $195,038.40.

Plaintiff now seeks in the one case a decree applying upon its deposits by way of set-off the amount due upon the notes held by the First National, thereby working a payment and discharge of the notes and a reduction of the credit to it in the form of the deposit by an equal amount. In the other case plaintiff seeks to have a decree setting off as against its deposit such part of the sums due from it upon notes held by the Guardian National as is equal to the amount of said deposit, thereby paying and discharging so much of said notes, wiping out the credit due it in the form of said deposit, and leaving plaintiff liable upon the balance of said notes not discharged by such set-off.

 Inasmuch as none of these notes had matured when the banks closed, it is first questioned whether they can be set off as against the deposit account, which was payable on demand. I do not understand that the right to set off mutual cross-demands in equity is defeated by the fact that some part thereof has not matured. The postponement of date of payment here was intended for the benefit of plaintiff. Such privilege of paying later, being for its own advantage, may be waived, inasmuch as no damage accrues to defendants as a result thereof. The assertion of the right of one to waive something belonging to him requires no argument in support thereof. The rule is quite generally recognized in this country. Thompson v. Union Trust Company, 130 Mich. 512, 90 N. W. 294, 97 Am. St. Rep. 494; Searle v. Crampton, 118 Conn. 42, 170 A. 480. In State ex rel. Gray v. Alward, 44 Ohio App. 281, 185 N. E. 560, 562, the court said: "The depositor might have had a time certificate of deposit not yet due at time of insolvency. He could not sue to recover it until due, but to say he had not a legal demand would be absurd."

 Nor do I consider the fact that under the terms of the indenture rights of action

upon the notes are, under certain circumstances, confined to action by the trustee, sufficient to defeat the right of set-off. The notes, payable to bearer, are the property of the banks and due to them from plaintiff. The deposit accounts are owing by the banks to plaintiff. Though in the indenture the right to sue is limited as hereinbefore observed, such limitation was manifestly intended as a protection to the common body of noteholders so that one or more might not pursue suits in attachment or segregation of assets upon execution ahead of and to the detriment of other holders who did not rush in with similar multitudinous, disruptive proceedings. It was not intended to serve as a weapon to be turned against noteholders and thus to bring about inability to secure cancellation or discharge of notes, when such discharge would result to the benefit of all other noteholders.

That such was the intent of the covenants is apparent from the clauses giving noteholders the right to sue when and if the trustee should refuse to do so, as above indicated, and from the final proviso of the section, limiting the cause of action. That clause is as follows: "Provided, however, that nothing in this Indenture or in any of the Notes contained shall affect or impair the right, which is unconditional and absolute, of the bearer of any Note or coupon to enforce payment thereof at and after the date of maturity in said Notes or coupons expressed, or the obligation of the Company, which is also unconditional and absolute, to pay the principal of and interest on the Notes to the respective bearers of the Notes and coupons at the time and place in the Notes and coupons expressed."

The obligation of the company is by this language made "unconditional and absolute," to pay the amount due on the notes when they mature, "to the respective bearers."

 Courts of equity have reserved to themselves independent of statute their original jurisdiction to compel set-offs of cross-demands. "In applying the equitable rule, courts of equity, where there is a special equity to be subserved and particularly where there is the interposition of assignments, receiverships and insolvency, and no equity of third persons to be injured, will, to prevent wrong and injustice, allow set-off to one with a right of action or of property, * * * although the case is not within the terms of the statutes." Gray v. School District (C. C. A.) 67 F.(2d) 141, 143. Many precedents are collected in Judge Wooley's opinion in the case quoted from.

■ The test of the propriety of forcing set-off lies not in the right to sue, but in the right to assert one's cross-demands in a suit brought against him by the other. State ex rel. Gray v. Alward, 44 Ohio App. 281, 185 N. E. 560. Consequently the fact that in some situations the trustee only may sue is of no relevancy here. The liability is an absolute one, and the holder thereof may not interpose as an objection against its own cause of action a provision obviously never intended to defeat the rule of equitable set-off.

Furthermore, we are dealing with equitable rights of set-off. Action at law upon the notes by the trustee may, under the indenture, be maintained but the recovery in such case is for the benefit of the several individual noteholders. They are in equity the real parties in interest in accordance with their several holdings, and any sum realized upon the notes is in equity their property, even though the title to the action at law is in the trustee. It follows that in equity the several demands are individual in character and that mutuality exists under the facts of each case here dealt with. Consequently the cases cited by defendants where set-off was denied because of difference in character of demands or difference in character of rights of action or of funds are not applicable.

■ The same line of reasoning disposes also of the contention of defendants that inasmuch as the indenture provides that "redemption" of an entire series of notes might be made but not of a part thereof, plaintiff may not now have a cancellation of a part of one series by set-off. This provision was not an exclusive one, granting only one method of payment, discharge, purchase, or redemption of notes. The noteholders could not be forced to accept payment before maturity without tender of unmatured interest; hence this provision was intended only as a grant of a special privilege to plaintiff to anticipate maturities upon certain fair conditions, if it found itself able to do so. The limitation that such redemption should be of an entire issue, but not of a part, was obviously meant to prevent preferences amongst individual holders of notes of the same series. There is nothing to indicate that the distinction between "redemption" and "payment," pointed out in Morgan v. United States, 113 U. S. 476, 5 S. Ct. 588, 28 L. Ed. 1044, and Pflueger v. Broadway Trust & Savings Bank, 351 Ill. 170, 184 N. E. 318, was not recognized. At any rate, the provision does not take the situation out of the rule governing equitable set-off of cross-demands to the effect that it is mutuality of obligations which controls; not limitation upon the legal right of action. The chancellor looks behind the legal provisions to discover the true equities of the parties; it is forced to recognize that the proposed set-off injures no noteholder but improves the position of every one still holding an unpaid note.

■ Nor will the proposed set-off bring about any resulting priority, preference, or realization of lien or advantage to any noteholder, forbidden by the indenture. In this connection the receivers again suggest as a bar to set-off a provision intended to protect and equalize noteholders. They urge it as a weapon to destroy that which would benefit all other holders of outstanding notes. This a court of equity will not permit.

We have here no preference, no resulting priority. We are dealing with set-off of mutual cross obligations which possesses none of the qualities of the two former terms. Those terms connote unfair advantage; and here there is no hint of such inequitable result. We are merely asserting the well-recognized rule that if there is mutuality of obligation, cross-demands must be set off, one against the other.

■ The set-off should be made effective as of the date of the closing of the banks. Dividends received by plaintiff should be returned or accounted for and the accounts charged one against the other in the manner and to the extent prayed.

Proper decree may be submitted.