## FIRST NAT. BANK OF INDIANOLA, IOWA, et al. v. MALONE et al.

### MALONE v. LANE et al.

### Nos. 10059, 10076.

Circuit Court of Appeals, Eighth Circuit.
March 9, 1935.

Howard L. Bump, of Des Moines, Iowa (George W. Graeser, of Des Moines, Iowa, on the brief), for Ina Malone.

J. O. Watson, Jr., of Indianola, Iowa (J. O. Watson and R. D. Watson, both of Indianola, Iowa, on the brief), for First Nat. Bank and others.

W. Z. Proctor, of Des Moines, Iowa (Rex H. Fowler, Howard Steele, Charles S. Bradshaw, and Casper Schenk, all of Des Moines, Iowa, and F. P. Henderson, of Indianola, Iowa, on the brief), for Carl H. Lane, administrator, etc.

Before GARDNER, SANBORN, and VAN VALKENBURGH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

These two cases are appeals from the action of the District Court for the Southern District of Iowa in allowing offset in favor of Carl H. Lane, administrator, appellee in cause No. 10056, against a note held by the appellant bank and its receiver, and in denying offset to Ina Malone, appellant in cause No. 10076. The facts in the case are somewhat complex and involved, but the following are deemed sufficient for the purposes of this determination:

October 31, 1931, the decedent, Daniel Malone, and Ina Malone, his wife, executed to the First National Bank of Indianola, Iowa, a note in the sum of $5,000 to become due November 1, 1936. This was secured by a mortgage on about one hundred and fifty acres of land, the property of said decedent. Daniel Malone died testate November 15, 1931. In his will he left to his wife all his personal property and a life estate with power of sale in all his real estate. In case of sale one-half the proceeds to be hers absolutely; the balance to belong to his son, Joseph Malone. In case his wife did not exercise the power of sale during her life, the remainder passed to his said son. November 30, 1931, Carl H. Lane, president of the First National Bank of Indianola, was appointed administrator with the will of Daniel Malone annexed. On the date of his death Daniel Malone had on deposit in said bank $1,073.35. December 16, 1931, this was transferred to the account of the administrator. Subsequently, proceeds of the sale of personal property of the estate increased the deposit to the credit of the administrator to $2,896.13. The remaining asset of the estate was the land securing the bank's note, which is conceded to be worth about $15,000, or three times the amount of the bank's mortgage lien. The Malone estate was found by the court to be insolvent; the claims filed against it, with interest, aggregating about $24,000. The bank filed no claim upon its note against the estate.

August 10, 1932, the First National Bank became insolvent. Melvin Royer was appointed and qualified as its receiver. In December, 1932, Ina Malone gave to Lane, administrator, $3,500, to pay all claims against the estate except her own claim for $15,000, for money loaned to her deceased husband, evidenced by his notes, and referred to in his will. This claim she waived. About the same time she paid some debts of Joseph Malone, son of the deceased, and he conveyed to her his contingent interest in the one hundred and fifty acres of land. In January, 1933, she paid to the bank's receiver, upon the $5,000 note of herself and husband, $1,806.37, principal, and $152.70 interest. She also paid to bank's receiver a Daniel Malone note of $500. The net result of these transactions was that the estate of Daniel Malone had on deposit in the First National Bank of Indianola, as of August 10, 1932, the sum of $2,896.16, and that in December, 1933, the joint and several note, executed by Daniel Malone and Ina Malone to that bank,

amounted, less credit of $1,806.37, to $3,193.63. The bank's claim was secured upon land conceded to be worth several times the amount of its said mortgage, and Ina Malone, by virtue of her payments and advances, was the sole beneficiary of the estate and owner of its real and personal property remaining, subject only to this mortgage of the bank. The bank had filed no claim against the Malone estate, and the administrator had brought no suit for an offset against the bank.

In this situation, Ina Malone, December, 1933, brought suit against the bank and its receiver to compel an equitable offset, making the administrator a party. The latter then filed cross-bill, praying that the estate be credited in the amount due it from the defendant bank, that said accounts be decreed to be mutual accounts, and be offset one against the other.

This suit, filed first in a state court, was duly removed to the District Court of the United States and there the offset prayed was decreed to the administrator, and denied to Ina Malone. These appeals followed.

■ First, with respect to the claim of Ina Malone: She is asking an equitable set-off on the ground that the debts of the estate of Daniel Malone are paid and that she is the beneficial owner and sole ultimate distributee of all the assets of that estate in the hands of the administrator. As stated in the brief of her counsel, "She really succeeded in the suit." The relief granted to the administrator will ultimately inure to her. The fatal defect in her individual claim to set-off is that her present equitable title was perfected after the date of the insolvency of the bank, which was August 10, 1932. On that date the title to the deposit in the bank of $2,896.16, was in the administrator as the representative of the estate of Daniel Malone, and subject to debts, undischarged, and in excess of assets available for their payment. Since that time, by the payments and advancements heretofore mentioned, she had acquired title to the real estate of the decedent, and will be the sole distributee of the fund in the hands of the administrator when final distribution is made. But this situation does not entitle her to the set-off she claims. The rights of the parties became fixed at the moment of insolvency of the bank and the consequent suspension of payments by it.

"The right to set off is governed by the state of things existing at the moment of insolvency, not by conditions thereafter arising, * * * or by any subsequent action taken by any party to the transaction." Dakin v. Bayly, 290 U. S. 143, 148, 149, 54 S. Ct. 113, 115, 78 L. Ed. 229, 90 A. L. R. 999; Scott v. Armstrong, 146 U. S. 499, 511, 13 S. Ct. 148, 36 L. Ed. 1059; Davis v. Elmira Savings Bank, 161 U. S. 275, 290, 16 S. Ct. 502, 40 L. Ed. 700; Yardley v. Philler, 167 U. S. 344, 360, 17 S. Ct. 835, 42 L. Ed. 192; Evansville Bank v. German-American Bank, 155 U. S. 556, 15 S. Ct. 221, 39 L. Ed. 259.

Mrs. Malone had no title to the deposit on the date the bank became insolvent. It is true that the decedent devised to her all his personal property, after the payment of his just debts. The law would have imposed the same limitation if the testator had not expressly done so. Subsequent acts by Mrs. Malone could not confer upon her a right of set-off which did not exist at the date of the bank's insolvency.

■ The position of the receiver of the National Bank of Indianola is that the claims are wanting in mutuality and, therefore, not subject to offset. In the brief the following reasons are assigned for this contention:

(a) The claim by the administrator was a several claim, while the claim by the bank on its note was a joint and several claim.

(b) The claim by the bank was a secured claim against the estate, while the claim of the administrator was based on funds realized from the liquidation of the estate on a deposit of funds.

(c) The only claim ever asserted by the bank was a claim in rem against the security so far as the estate was concerned, while the claim by the administrator is a deposit claim and a direct claim against the bank.

(d) The claim by the bank on its note was not due at the moment of suspension of the bank, while the deposit claim was a demand claim and there was no understanding that the one should be paid by the other.

In our judgment none of these specifications is effective to defeat the set-off in favor of the administrator.

"A demand that is joint and several may be set off or counterclaimed against a separate demand." 57 Corpus Juris, par. 115, p. 461; North Chicago Rolling-Mill Co. v. St. Louis Ore & Steel Co., 152 U. S. 596, 615, 14 S. Ct. 710, 38 L. Ed. 565; Gray v.

Rollo, 18 Wall. 629, 21 L. Ed. 927; Hudson Co. v. Thomas (D. C.) 6 F. Supp. 857, 859; Allen v. Maddox, 40 Iowa, 124, 126; Jordison v. Jordison Bros., 215 Iowa, 938, 247 N. W. 491; Dolan v. Buckley, 197 Iowa, 1363, 199 N. W. 302; section 11151, Iowa Code 1931; section 11153, Iowa Code 1931; Wisdom v. Guess Drycleaning Co.˙ (D. C.) 5 F. Supp. 762, 764.

The converse is equally true. The bank's claim against Daniel Malone and Ina Malone was joint and several. It was a subsisting claim against the estate of Daniel Malone. In such case either debtor may set up against the bank's claim, or cause of action, any claim or contract held by it at the time the bank became insolvent. Richmond Ins. Co. v. Litteer (C. C. A. 8) 1 F. (2d) 311.

 It is true that the ordinary equity rule of set-off in case of insolvency is that "where the mutual obligations have grown out of the same transaction, insolvency on the one hand justifies the set-off of the debt due upon the other"; but "courts of equity frequently deviate from the strict rule of mutuality when the justice of the particular case requires it." Scott v. Armstrong, 146 U. S. 499, 507, 13 S. Ct. 148, 150, 36 L. Ed. 1059. The statutes of Iowa, as construed by its court of last resort, permit a set-off belonging to one of two joint and several makers of a promissory note, whether the holder elects to sue one or both of the makers thereof. The right to assert a set-off at law is, of course, of statutory creation, and, while a federal court of equity is not restricted in its allowance of a set-off to the limitations prescribed by state statute, nevertheless the recognition of the right in the state where the action arose and was brought is highly persuasive. And where the statutory right of set-off is broader than the right of set-off in equity, federal courts of equity will enforce the broader statutory right. Mason v. United States, 260 U. S. 545, 43 S. Ct. 200, 67 L. Ed. 396; Storing v. First National Bank (C. C. A. 8) 28 F. (2d) 587; Black & White Taxicab & Transfer Co. v. Brown & Yellow Taxicab & Transfer Co., 276 U. S. 518, 48 S. Ct. 404, 72 L. Ed. 681, 57 A. L. R. 426. Courts of equity have from an early date reserved jurisdiction over cross-demands, not falling within the strict terms of statutes, and have granted relief independently of, as well as in aid of, statutes upon the subject, where special equity exists, and where the equity of third persons will not be prejudiced. Scott v. Armstrong, supra; Gray v. School District (C. C. A. 3) 67 F.(2d) 141; Hudson Co. v. Thomas (D. C.) 6 F. Supp. 857. Where no superior equities intervene, the set-off of a deposit against the debt upon an unmatured note is allowed upon the theory that in good conscience one ought not to pay his debt to his creditor if he cannot ultimately compel his creditor to pay the debt due him. George D. Harter Bank v. Inglis (C. C. A. 6) 6 F.(2d) 841. The fact that the claim of the bank on its note was not due at the moment of suspension of the bank cannot have the effect of destroying the mutuality essential to the right of set-off. Schuler v. Israel, 120 U. S. 506, 7 S. Ct. 648, 30 L. Ed. 707; North Chicago Rolling-Mill Co. v. St. Louis Ore & Steel Co., 152 U. S. 596, 615, 14 S. Ct. 710, 38 L. Ed. 565; George D. Harter Bank v. Inglis (C. C. A.) 6 F.(2d) 841, 843. Nor does the fact that the bank's was a secured claim while that of the administrator was based on funds realized from the liquidation of the estate, and deposited in the bank, operate to destroy mutuality under the liberal rule prevailing. The equitable rule of set-off is derived from the civil law and is founded upon principles of natural equity and justice. Smith v. Bath Loan & Building Association, 126 Me. 59, 136 A. 284, 50 A. L. R. 526. By the exercise of its equitable jurisdiction the court is enabled to do justice between the parties. While the doctrine was originally "a mere procedural convenience, it has now become 'really a requirement of substantive justice.'" Champlin Refining Co. v. Gasoline Products Co. (C. C. A. 1) 29 F.(2d) 331, 338; The Gloria (D. C.) 286 F. 188, 192. Upon this point counsel for the receiver cite Gardner v. Chicago Title & Trust Co., 261 U. S. 453, 43 S. Ct. 424, 67 L. Ed. 741, 29 A. L. R. 622. That case involved a deposit by a trustee in bankruptcy with knowledge of the bank that the fund was appropriated to pay the debts of the bankrupt, of which the note of the bank was one. The bank, therefore, was compelled to allow the amount it had received in dividends, and its claim was allowed only for the amount due on its note above the value of its security. Here there was no proceeding in bankruptcy, and the decision of the Supreme Court cited, based upon the special circumstances recited in its opinion, is no authority for the contention that mutuality was lacking because of the fact that the claim of the bank was a secured claim.

Perhaps the strongest insistence of the receiver is that the Iowa statute requires that claims against an estate, to be allowed as general claims, must be filed within twelve months of the first notice of appointment of the administrator, unless peculiar circumstances entitle the claimant to equitable relief. At the time this suit was filed a little more than two years had elapsed since the publication of said notice. The bank had filed no claim against the estate, and therefore insists that its general claim is barred, and that lack of mutuality results. It relies solely upon its mortgage security for the payment of its note. Counsel cite the decision in Fitzgerald v. Flanagan, 155 Iowa, 217, 224, 135 N. W. 738, Ann. Cas. 1914C, 1104, which holds that, even though the personal obligation is barred, the action to foreclose against the land is not thereby defeated. As we have seen it is the situation at the time of the closing of the bank which controls; but, in any event, under the statute law of Iowa, and the decisions of the Iowa courts, the right of the administrator to this set-off is preserved notwithstanding the lapse of the bank's general claim against the estate.

Section 11019, c. 487, Code Iowa 1931, provides: "*Counterclaim.* A counterclaim may be pleaded as a defense to any cause of action, notwithstanding it is barred by the provisions of this chapter, if it was the property of the party pleading it at the time it became barred, and was not barred at the time the claim sued on originated; but no judgment thereon, except for costs, can be rendered in favor of the party so pleading it."

Set-offs have been allowed under this statute in similar situations. Merritt v. Peterson, 208 Iowa, 672, 222 N. W. 853; and, generally, claims which for some reason could not be made the basis of an independent action have been allowed as set-offs against a plaintiff's claim.

"The real indebtedness remains the same. It is the difference between the amounts of the respective obligations or debts from one to the other." Ware, Adm'r, v. Howley, 68 Iowa, 633, 27 N. W. 789, 791.

In Secor v. Siver, 165 Iowa, 673, 678, 146 N. W. 845, 847, Mr. Justice Deemer used this language: "Again, even if the counterclaim be barred, or, by reason of the circumstances, could not have been allowed by the administrator, or been made the basis of an independent suit, it may, to the amount thereof, be used as an offset against plaintiff's claim."

Such special statutes of limitation do not apply to offsets. Wood's Limitation of Actions, § 188; Lay v. Mechanics' Bank, 61 Mo. 72. Compare Norfolk & W. Ry. Co. v. Graham (C. C. A. 4) 145 F. 809.

The result reached by the trial court was obviously just and equitable. If the view of the receiver were to prevail, the insolvent bank would have its claim paid in full; but the Malone estate would receive only a portion of its claim against the bank. The right of set-off in equity, against unmatured claims, even where strict mutuality is lacking, is based upon the bank's insolvency.

"Where insolvency has intervened, equity has extended the right to an unmatured note, upon the theory that in good conscience one ought not to be required to pay a debt to his creditor if he cannot ultimately compel the creditor to pay a debt due him. Laclede Bank v. Schuler, 120 U. S. [511] 506 [7 S. Ct. 644, 30 L. Ed. 704]." George D. Harter Bank v. Inglis (C. C. A. 6) 6 F.(2d) 841, 843.

"Cross demands and counterclaims, whether arising out of the same or wholly disconnected transactions, and whether liquidated or unliquidated, may be enforced, by way of set-off, whenever the circumstances are such as to warrant the interference of equity to prevent wrong and injustice." North Chicago Rolling-Mill Co. v. St. Louis Ore & Steel Co., 152 U. S. 596, 615, 14 S. Ct. 710, 715, 38 L. Ed. 565.

Counsel for the receiver call attention to the fact that the Malone estate was at one time somewhat insolvent as to general creditors. This could not affect the bank whose note was secured by a prior lien upon land conceded to be worth three times the face of the note. Counsel for the administrator point out that, as to the bank, the estate had a special solvency. Certainly "the circumstances are such as to warrant the interference of equity to prevent wrong and injustice." The creditors of the bank are entitled to no more than full payment of the note with interest. This they will receive through the decree entered. That decree, accordingly, is affirmed. The costs in this court will be assessed against the receiver.